EDWARD A. DUFRESNE, JR., Chief Judge.
This is an appeal by Lafayette Insurance Co. and its insured, House of Hubcaps, defendants-appellants, from a judgment in favor of Pamela Doran in this slip and fall case. Doran has answered the appeal. The jury awarded Doran $444,790, reduced by 37.92% for her comparative fault. For the following reasons we amend the judgment to eliminate the awards for future medical expenses and past and future loss of wages. In all other respects the judgment is affirmed.
The basic facts are straightforward. House of Hubcaps is an automobile supply store. Doran was working for another automobile related shop and went to House of Hubcaps on a rainy day to pick up a part for her employer. When leaving the House of Hubcaps she slipped on the wet stairs and fell. She subsequently underwent surgery for spinal disc problems allegedly caused by the fall. She further claimed that she was disabled because of the accident and subsequent surgery.
A jury returned a verdict in Doran’s favor as follows:
Past medicals $ 40,750
Future Medicals $ 24,250
Lost Earnings at Tidal $ 93,540
Future Lost Earnings $ 59,420
Past and Future Pain and Suffering $ 155,830
13L0SS of Quality of Life $ 71,000
TOTAL $444,790
It further found Doran 37.92% at fault and House of Hubcaps 62.08% at fault. Judgment was accordingly entered for plaintiff in the amount $276,125.63, plus interest and cost.
Defendants have appealed urging that plaintiff was 100% at fault, that she failed to prove causation, and that the various items of damages were not adequately supported by the evidence. Doran has answered the appeal contending that House of Hubcaps was 100% at fault, and that the award for future wages was substantially too low.
The first issue here concerns the jury’s apportionment of fault. In Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985) the court held that the standard of appellate review in comparative fault determinations is the same as that for other factual matters, i.e. the manifest error rule. It then went on to enumerate factors to be weighed in evaluating fault apportionments for manifest error as follows. The appellate courts are to consider 1) whether the conduct resulted from inadvertence or involved awareness of the danger, 2) how great a risk was created by the conduct, 3) the significance of what was sought by the conduct, 4) the capabilities of the actor, whether inferior or superior and 5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
*206 Initially we note that there was confusing and conflicting evidence as to the configuration of the stairs at the time of the accident, mainly because the stairs had been rebuilt by the time of trial. The defense introduced photographs of the stairs taken several weeks after the accident which showed that there were five steps made of 2x12 inch lumber approximately 8 feet wide, with a rail on each side consisting of an upright 2x4 and a 1x5 plank railing. Several witnesses testified that the steps were painted with non-skid paint. At the top of the stair was a double glass door.
Plaintiff testified that the configuration in the pictures was substantially correct except that the treads were made of either 2x4 or 2x6 lumber and were not painted. She also said that they were slippery. Her description of the accident was that when "she came out of the door she proceeded to the end of the stairs so as to be near a railing. She said that as she began to' descend she was looking down and noted that the tread boards were warped thus causing water to puddle on the surface. She was wearing high top tennis shoes, and when she placed about half of her foot on the next step down it went, out from under her. She grabbed the rail, but indicated that it was wobbly and she was unable to recover her footing. She said that she fell “on my rear end and my upper back. Bump, bump, bump, bounced all the way down.”
It is apparent that the jury believed that the steps were unpainted, slippery and puddled over, and that the rail was not stable. It is equally apparent that they concluded that plaintiff was also at fault in placing only her heel on the edge of the step. Considering all of the factors set forth in Watson, supra, we rule that the jury could reasonably, have determined that the defendant was 62.08% at fault, with the remainder being allotted to plaintiff. There being no manifest error on the part of the jury on this point, we must affirm that determination.
The next issue relates to causation. Defendants contend that none of plaintiffs treating physicians testified directly that her disc problems were the result of the fall, and therefore that she failed to prove her case. However, defendants ignore other evidence of record. Plaintiff had no complaints of back pain immediately prior to the fall, but said that these pains began that day and grew increasingly severe over the next few days. Her pain became so severe that she could no longer tolerate driving. Her sister and several friends testified that she was in good health before the accident, but afterwards showed obvious signs of pain.
Dr. Gordon Nutik, who treated her at the request of the insurer, was of the opinion that she had a soft tissue injury with bursitis in the hip, but found no other condition that he could relate to the fall. He noted that he did not find evidence of her malingering, but could not really explain the continuing pains. Nonetheless, plaintiff continued to complain of pain, and in March of 1996, about a year after the accident, she was diagnosed by Dr. Logan as having herniated discs at the L3-L4 and L4-L5 levels. She continued conservative treatment, but finally agreed to surgery about two years later. She underwent a posterior fusion at the L3-L5 level in which plates and screws were utilized. Her surgeon, Dr. Thomas Whiteeloud, said that he could not address causation because of the length of time between the fall and surgery. He considered the surgery as having a good result.
Plaintiff testified to continuous back problems over this entire time, she regularly sought treatment for this pain, and her family and friends corroborated, at *207 least in part, her complaints. In light of this evidence the jury could well have found that the fall caused the injury and while we might have found differently, we cannot say that the jury’s determination was manifestly erroneous.
Defendants next complain about the awards for past and future wages. Plaintiff testified that she was working at two jobs at the time of the accident in February of 1995. She said that she quit the automotive shop job, but continued to drive the cab for another year, although on a part-time basis because driving for long periods exacerbated her back problems. She indicated that she was earning about $3,000 per month before the incident. However, she did not produce any income tax returns for years after 1991, nor did she come forth with any other documentary or other corroborative evidence of earnings. She also testified that her pain had become so severe about a year after the fall that she was unable to work at all. Since the surgery she is considered totally disabled for Social Security purposes. Her past work experience included long distance trucking, a job she said she could no longer do.
Her economic expert, Shale Wolfson, testified that he made several calculations based on plaintiffs prior experience and earnings. He first used figures showing that cab drivers earn about $17,000 per year and calculated her lost wages at this rate up to the time of trial to have been about $130,000. He then subtracted an estimated $21,000 in earnings which plaintiff said she had earned in 1995, leaving a net loss of $109,000. He did not give any figure for future lost wages at this rate. He was then asked to assume earnings of $34,000 per year, and came up with a pretrial figure of $269,000, and a future loss of $383,000. The future lost wage figure was based on plaintiff not being able to work for the remainder of her life. On the basis of this testimony the jury awarded $93,540 for past lost wages and $59,420 for future lost wages.
The problem with these calculations is that there is no evidence to support the underlying wage loss, other than plaintiffs completely uncorroborated statements about past earnings. She testified that she had two jobs at the time of the fall, but did not produce any documentary evidence of earnings such as pay stubs, nor did she elicit testimony from her employers which would have supported her claims. Moreover, there was no medical or other evidence to substantiate that plaintiff was disabled either before or after the accident, except perhaps for the time directly involved in the surgery. In these circumstances the award of lost past and future wages was merely conjectural and the jury was manifestly wrong in making these awards. Matthews v. Dousay, 96-858 (La.App. 3rd Cir. 1/15/97), 689 So.2d 503. We therefore set aside the awards for past and future loss of earnings.
Similarly, there was no evidence of future medical expenses. None of plaintiffs treating physicians make mention of such future treatments, nor did plaintiff herself. The only evidence remotely bearing on this point is that plaintiff still takes pain medication, but even here there was no evidence of the cost of these drugs. We therefore likewise conclude that the jury erred in making this award and set it aside as well.
As to the remaining items of damages, defendants do not argue that they are too high. Rather they assert that plaintiff failed to prove causation and thus that there is no basis for these awards. As shown above, the jury’s determination as to causation was not manifestly erroneous and therefore there was a basis for the awards.
*208 For the foregoing reasons, we hereby vacate the awards of $93,540 for past loss of earnings, $59,420 for future loss of earnings, and $24,250 for future medical expenses. The remaining items total $267,580 which when reduced for plaintiffs comparative fault results in an adjusted amount of $166,113.67. In all other respects the judgment is affirmed.

AMENDED AND AFFIRMED AS AMENDED.