3 So.3d 1 (2008)
ADVOCATE FINANCIAL, L.L.C.
v.
LONGENECKER & ASSOCIATES, LTD., a Law Corporation; Bernard, Cassisa, Elliot & Davis, a Professional Law Corporation; and Lafayette Insurance Company.
No. 08-CA-490.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 2008.
Writ Denied February 18, 2009.
*2 William J. Wegmann, Jr., Orr Adams, Jr., Wegmann & Adams, L.L.C., Mark C. Landry, Newman, Mathis, Brady, & Spedale, Metairie, Louisiana, for Defendant/Appellant.
Andrew L. Kramer, Gary J. Elkins, Yvonne Chalker, Elkins, P.L.C., New Orleans, Louisiana, for Plaintiff/Appellee.
Panel composed of Judges CLARENCE E. McMANUS, FREDERICKA HOMBERG WICKER, and MADELINE JASMINE.
MADELINE JASMINE, Judge Pro Tempore.
Appellant, Lafayette Insurance Company (Lafayette), appeals the grant of summary judgment in favor of plaintiff, Advocate Financial, L.L.C (Advocate). This suit arises out of a personal injury litigation, Pam Doran v. Lafayette Ins. Co. and House of Hubcaps.[1] Advocate, a champerty lender who loaned money to Doran and her attorney, Robert L. Hackett, to finance this and other litigation, filed suit against Lafayette to enforce its rights under LSA-R.S. 10:9-412[2] after Lafayette tendered payment of litigation proceeds directly to Doran and her attorney, instead of paying Advocate after Advocate notified Lafayette's litigation counsel that Doran and her attorney had assigned the proceeds of the litigation to Advocate.
For the following reasons, we affirm the judgment in favor of Advocate. Lafayette has also filed in this Court an Exception of No Cause of Action, which we also deny for the reasons below.
On appeal, Lafayette assigns the following errors of the trial court:
1. The Trial Court erred in applying the non-uniform provisions of R.S.10:X-XXX-XXX of Louisiana's Uniform Commercial Code-Secured to the transactions and judgment sued upon in this matter. La. R.S.10:9-109(d) provides the UCC does not apply to a transfer of an interest in or an assignment of a claim under a policy of insurance. R.S. 22:655(B)(1) gives an injured person a direct right of action against the liability insurer of a tortfeasor. This applies to both notices and to both the Doran indebtedness as well as to the Hackett indebtedness.
2. The Trial Court erred in finding that Lafayette Insurance Company was indebted to Robert Hackett et al in the Doran litigation. Advocate could have no greater rights against Lafayette than did Mr. Hackett. If Lafayette was not indebted to Mr. Hackett, then there would be nothing to seize.
3. The Trial Court erred in finding that a creditor's attorney may provide "notification, authenticated by the debtor or the secured party."
4. The Trial Court erred in finding that "notice" may be given to independent, litigation counsel rather than to a registered agent for service of process, to a director or *3 officer of the corporation, or to the corporate offices and place of business.
5. The Trial Court erred in finding that the prerequisites for notice and authentication under R.S.10:X-XXX-XXX had been properly met with respect to the Advocate-Doran indebtedness.
6. The Trial Court erred in finding that the notice to an organization R.S.10:1-201, subsections 25, 26 and 27 (before amendment) had been properly met with respect to the Advocate-Doran indebtedness, viz., sent to litigation counsel.
7. The Trial Court erred in finding that the prerequisites for notice and authentication under R.S.10:X-XXX-XXX had been properly met with respect to the Advocate-Hackett indebtedness.
8. The Trial Court erred in finding that the prerequisites for notice had been met where the notice letter was sent with reference to "Robert L. Hackett" but the satisfaction of judgment check was made payable to "Pamela Doran and the Law Offices of Robert L. Hackett, LLC" a completely separate legal entity.
9. The Trial Court erred in finding that R.S.10:1-201, subsections 25, 26 and 27 (before amendment) had been properly met with respect to the Advocate-Hackett indebtedness.
10. The Trial Court erred in failing to apply the defense of contributory and comparative negligence to the claim and all other defenses pleaded in the Answer, as well as the plea that Pamela Doran's indebtedness has prescribed.
11. The Trial Court erred in granting the Motion for Summary Judgment, as there existed genuine issues of material fact, the existence or non-existence of which are essential to plaintiffs cause of action.

FACTS AND PERTINENT PROCEDURAL HISTORY
Pamela Doran was a client of attorney, Richard L. Hackett, whom Hackett represented on a contingency fee basis in her personal injury suit against Lafayette and its insured, House of Hubcaps, filed on January 26, 1996. During the course of Hackett's representation of Doran, Hackett executed and delivered to Advocate two commercial guarantees of unlimited amount and security agreements. The first set, dated November 16, 1995, Hackett signed individually and as sole proprietor on behalf of Hackett and Associates, his law firm. Advocate's security interests were perfected by the filing of a UCC-1 financing statement. On February 2, 1998, Hackett executed and delivered to Advocate the second commercial guaranty of unlimited amount, signed by Hackett individually and as sole proprietor on behalf of the Law Offices of Robert L. Hackett. Hackett secured his debt with Advocate by assigning his rights to his share of the proceeds in the Doran litigation to Advocate. On April 10, 2000, and on November 15, 2000, Hackett executed and delivered to Advocate promissory notes, which were admitted into the record.
Doran also borrowed money from Advocate. Doran's indebtedness to Advocate was secured by a perfected security interest covering, among other things, all sums received by Doran in the Doran litigation, as evidenced by the promissory note, client security agreement, and UCC-1 financing statement, which were admitted into the record.
The Doran litigation was tried to a jury September 9-11 of 2002, who reached a *4 verdict in favor of Doran and awarded her money damages. Judgment was entered on November 12, 2002.
Shortly before trial, on September 6, 2002, Advocate's counsel sent a letter, via certified mail, to Lafayette's trial attorney in the Doran litigation, Geoffrey Longenecker, notifying Lafayette[3] of its perfected security interest in any sums tendered by Lafayette to Doran, specifically under LSA-R.S. 10:9-412. This letter was received by Lafayette's attorney on September 11, 2002. Attached to it was Advocate's documentation of the debt, including the UCC-1 filing statement.
On October 1, 2002, Lafayette, through its attorney Longenecker, issued a subpoena duces tecum and Notice of Deposition to Advocate for copies of "all notes, mortgages, liens, claims, checks, bills, medical records, medical bills, and any other document of whatsoever kind or nature with respect to Pamela R. Doran and the subject of the claim asserted by you in the attached correspondence or otherwise."
On October 17, 2002, Advocate's counsel sent another letter, via certified mail, to Mr. Longenecker as Lafayette's attorney, notifying Lafayette of its perfected security interest in any sums tendered by Lafayette in the Doran litigation to Hackett. This letter was received by Lafayette's attorney on October 19, 2002. It, also, included Advocate's documentation of the debt.
The trial court's judgment was appealed; appellate counsel for Lafayette was Howard B. Kaplan. This Court rendered a judgment on appeal on November 25, 2003.[4]
On March 25, 2004, Lafayette tendered a check in the amount of $264,616.26 payable to "Pamela R. Doran and the Law Offices of Robert L. Hackett, L.L.C." in satisfaction of the jury verdict in the Doran litigation.
On April 14, 2005, Advocate filed this suit against Lafayette Insurance Company. Judgment was entered in favor of Advocate on December 14, 2007. Written Reasons for Judgment were entered on January 30, 2008 This appeal followed.[5]

ANALYSIS
As this Court recently stated in Muller v. Carrier Corp. 07-770 (La.App. 5 Cir. 4/15/08), 984 So.2d 883, 885:
Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim. LSA-C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Id. Appellate *5 courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir. 9/16/98), 719 So.2d 1086. The decision as to the propriety of a grant of a Motion for Summary Judgment must be made with reference to the substantive law applicable to the case. Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350 (La.App. 5 Cir.1988).
The substantive law applicable to this case is LSA-R.S. 10:9-412, which states:
§ 9-412. Discharge of tortfeasor; notification and filing of assignment
(a) Discharge of tortfeasor. Subject to subsections (b) through (c), a person obligated on a tort claim may discharge its obligation by paying the debtor until, but not after, the person receives a notification, authenticated by the debtor or the secured party, that the amount due has been assigned and that payment is to be made to the secured party. After receipt of the notification, the person may discharge its obligation by paying the secured party and may not discharge the obligation by paying the debtor.
(b) When notification ineffective. Notification is ineffective under subsection (a) if it does not reasonably identify the rights assigned.
(c) Proof of security interest. If requested by the person obligated on the tort claim, a secured party shall seasonably furnish to the person reasonable proof that the assignment of the tort claim has been made. Unless the secured party complies, the person may discharge its obligation by paying the debtor, even if the person has received a notification under subsection (a).
(d) Enforcement. After notification, the secured party has the rights established under R.S. 13:3864 through 13:3868.
"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LSA-C.C. art. 9. "The words of a law must be given their generally prevailing meaning." LSA-C.C. art. 11.
Lafayette has filed an Exception of No Cause of Action in this Court, arguing first that LSA-R.S. 10:9-412 does not apply to a transfer of an interest in or an assignment of a claim under a policy of insurance. Second, Lafayette argues therein that Lafayette was never indebted to Hackett, or in the alternative, is only indebted to Hackett for the amount of his fees in this litigation, which was not proved because the contingency fee contract was not introduced.
The Exception of No Cause of Action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the petition. Ackel v. Ackel, 97-70 (La.App. 5 Cir. 5/28/97), 696 So.2d 140 at 142. For the adjudication of the exception, the well-pleaded facts of the petition are accepted as true. No evidence may be introduced at any time to support or controvert the exception. Id.
It is clear and undisputed that Lafayette is a "person obligated on a tort claim," as per LSA-R.S. 10:9-412. It is also undisputed that Advocate is a secured party who notified Lafayette that Doran and Hackett, the debtors, had assigned their rights to the proceeds of this litigation to Advocate, as evidenced by the attachments to the notification letters. The arguments *6 that Lafayette makes in the Exception are defenses to the action. Contrary factual assertions are considered defenses, which must be tried on the merits. Angelica v. Angelica, 608 So.2d 256 (La.App. 5 Cir. 1992). Accordingly, we deny the Exception. We note, however, that these arguments are also made in the appeal, and are discussed below.
Lafayette argues that material issues of fact remain in dispute, but fails to identify which facts. Our review of the record, furthermore, fails to support this contention.
First, Lafayette argues that the Trial Court erred in applying the non-uniform provisions of R.S.10:X-XXX-XXX of Louisiana's Uniform Commercial Code-Secured to the transactions and judgment sued upon in this matter. Lafayette argues that La. R.S.10:9-109(d) provides the UCC does not apply to a transfer of an interest in or an assignment of a claim under a policy of insurance, but argues that R.S. 22:655(B)(l) gives an injured person a direct right of action against the liability insurer of a tortfeasor. LSA-R.S. 10:9-412 states that "a person obligated on a tort claim may discharge its obligation...." Clearly, Lafayette was a person obligated on a tort claim. The statute does not limit its application to a "tortfeasor."
We find that this is not an assignment of a claim under an insurance policy. Doran and Hackett, as evidenced by the attachments to the "notification" letters sent by Advocate to Lafayette in September and October of 2002, assigned their rights to the proceeds of this lawsuit to Advocate. The fact that the proceeds were paid from an insurance policy issued by Lafayette to the tortfeasor does not make this an "assignment of a claim under a policy of insurance" or an assignment of "a tort claim by Pamela Doran against a tortfeasor...."[6] We find that the assignment of the litigation's proceeds was within the scope of this statute.
In its second Assignment of Error, Lafayette argues that the Trial Court erred in finding that Lafayette Insurance Company was indebted to Robert Hackett, et al in the Doran litigation. We disagree. Advocate points out that Lafayette, in the personal injury litigation, tendered its check to "Pamela R. Doran and the Law Offices of Robert L. Hackett, L.L.C." jointly. This act recognized that the Law Offices of Robert L. Hackett, L.L.C. had a right to a portion of those proceeds of the litigation paid by Lafayette; hence, Lafayette was indebted to Hackett. Further, the guaranty that Hackett signed in 1998 was signed by Hackett individually and as sole proprietor of the Law Offices of Robert L. Hackett.
Lafayette argues that the amount of the proceeds due to Hackett (and thus assignable by him) is unproven, and the matter must be remanded for calculation. We disagree. Hackett, et al clearly assigned his share of the proceeds, not a particular dollar amount, of this lawsuit to Advocate, as security for various loans he accepted and the loan he guaranteed for Doran. The parties accept that he was hired by Doran under a contingency fee contract, noting only that the terms of it are not in the record. As such, it is agreed that Hackett, et al was entitled to some percentage of the $264,616.26; it is undisputed that he assigned the whole of that to Advocate. No further calculations are necessary in this suit. If Doran and Hackett disagree with how Advocate applies these amounts to their debts, that is a *7 matter between Advocate, Doran and Hackett, not Lafayette.
Lafayette next argues that the Trial Court erred in finding that a creditor's attorney may provide "notification, authenticated by the debtor or the secured party." Lafayette argues that Advocate and not its attorney should have provided the appropriate notice to Lafayette.
The trial court, however, disagreed, finding "it is a black-letter tenet of our law of mandate that when a client engages an attorney to perform legal services, a principal-agent relationship is established, in which the attorney acts as agent for the client." The trial court concluded that Advocate's counsel had the authority to act on Advocate's behalf in this matter. We find no error in this conclusion. There is nothing in LSA-R.S. 10:9-412 that prohibits an attorney from acting on behalf of the secured party. Further, Lafayette argues that the notice is not "authenticated" by Advocate. We find that the notice was properly authenticated under this statute. LSA-R.S. 10:9-102(a)(7)(A) defines "authenticate" as "to sign." We find that Advocate's attorney's signature on the notification letter fulfills this requirement.
Lafayette's Assignments of Error 4, 5, 6, 7, 8, and 9 all deal with the adequacy of the notice of the assignment that Advocate sent to Lafayette. Lafayette argues that the trial Court erred in finding that notice may be given to independent litigation counsel rather than to a registered agent for service of process, to a director or officer of the corporation, or to the corporate offices and place of business.
Though this statute contains no definition of notice, notice is defined in Louisiana's Commercial Laws, LSA-R.S. 10:1-201(25), (26), and (27),[7] as follows:
(25) A person has "notice" of a fact when
(a) he has actual knowledge of it; or
(b) he has received a notice or notification of it; or
(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. A person "knows" or has "knowledge" of a fact when he has actual knowledge of it.
(26) A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when
(a) it comes to his attention; or
(b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.
(27) Notice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization *8 to communicate information unless such communication is part of his regular duties or unless he has reason to know of the transaction and that the transaction would be materially affected by the information.
LSA-R.S. 10:9-412 required that the person obligated on the tort claim receive notification that the amount due has been assigned and that payment is to be made to the secured party. Lafayette argues that litigation counsel was the improper person to send notice to, that notice should have gone to or been served upon the corporate agent for service of process.
We agree with the trial court that a plain reading of LSA-R.S. 10:9-412 does not require service of the notification on the Lafayette's registered agent for service of process. The notice definitions of LSA-R.S. 10:1-201(25), (26), and (27) are broad. We find nothing in LSA-R.S. 10:9-412 or 10:9-109 that says notification cannot be effectively given to an insurance company's litigation counsel. Lafayette argues that Longenecker's representation of Lafayette was limited in scope and did not include receiving notifications under LSA-R.S. 10:9-412. We find Lafayette's argument unconvincing. This notification concerned a matter pertaining to this litigation specifically. This opinion holds that under the facts of this case, litigation counsel is a proper person to receive notice; it should not be construed to hold that litigation counsel is the only proper person who could be notified.
Further, it is undisputed that Lafayette had actual notice of the assignment, as evidenced by the subpoena duces tecum issued by Lafayette's counsel following receipt of the notification letters, and as evidenced by the Bruce Holmes's affidavit attached to the Motion for New Trial.
Next, Lafayette argues that the court erred in finding that the notice and authentication requirements had been met for both the Doran assignment and the Hackett assignment, and should have analyzed them separately. We find no merit to this assignment. In each case, Advocate's attorney employed the same method to notify Lafayette.
In its tenth Assignment of Error, Lafayette argues that the Trial Court erred in failing to apply the defense of contributory and comparative negligence to the claim and all other defenses pleaded in the Answer, as well as the plea that Pamela Doran's indebtedness has prescribed. Specifically, Lafayette argues the "lengthy history of inaction and delays on the part of Advocate Financial in enforcing its rights against both Ms. Doran and Mr. Hackett,...."
A plain reading of LSA-R.S. 10:9-412 shows that use of the remedy under that statute does not require the secured party to initiate or exhaust other legal remedies that may be available to it. "A security interest in rights under a judgment is perfected by filing a financing statement without the additional necessity of filing a notice in the court records or intervening in any judicial proceedings in which the judgment was rendered."[8] Further, Advocate's cause of action arose under this statute when Lafayette failed to pay Advocate after receiving notification of the assignment in favor of Advocate. Advocate's cause of action against Lafayette is independent of any other causes of action Advocate may have against its debtors.
*9 Accordingly, for the reasons assigned above, the trial court's judgment is affirmed.
AFFIRMED.
NOTES
[1] 24th JDC No. 488-819; 03-849 (La.App. 5 Cir. 11/25/03), 862 So.2d 204.
[2] This case appears to be a matter of first impression, no other published case at this time having interpreted LSA-R.S. 10:9-412.
[3] Whether this notice was legally effective under LSA-R.S. 10:9-412 is the subject of most of Lafayette's Assignments of Error, discussed below.
[4] See footnote 1.
[5] In brief, Lafayette seems to assert a prescription argument, and claims that it filed an Exception of Prescription in this Court. However, no such Exception was filed. Furthermore, we find that this suit does not sound in tort. Accordingly, the prescriptive period is not one year.
[6] Lafayette's Reply Brief and Supplemental Memorandum, page 1.
[7] The notice provisions found in R.S. 10:1-201 were redesignated as R.S. 10:1-202 in 2006.
[8] Stuckey, James A., Louisiana's Non-Uniform Variations in U.C.C. Chapter 9, 62 La. L.Rev.793, 811 (2002).