# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-1053

DEREK BLAINE BAUMBOUREE

VERSUS

SHARON MECHE BAUMBOUREE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2014-3303
HONORABLE DAVID A. BLANCHET, DISTRICT JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, Jimmie C. Peters, Phyllis M. Keaty, and John E. Conery, Judges.

**Cooks, J., dissents without reasons.**

**Saunders, J., dissents and assigns written reasons.**

**AFFIRMED.**

**G. Bruce Kuehne**
**Kuehne & Foote, APLC**
**10839 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 767-7186**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Sharon Meche Baumbouree**

**Andre' Doguet**
**Attorney at Law**
**1223 St. John Street**
**Lafayette, LA 70506**
**(337) 235-7144**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **Derek Blaine Baumbouree**

**Charles J. Boudreaux, Jr.**
**Jones Walker**
**600 Jefferson Street, Suite 1600**
**Lafayette, LA 70501**
**(337) 593-7600**
**COUNSEL FOR OTHER APPELLEE:**
  **Hamilton Medical Group, APC**

**KEATY, J.**

Sharon Meche Baumbouree appeals from the trial court's grant of partial summary judgment in favor of Derek Blaine Baumbouree, her former husband, "holding that the stipulated per share value of Hamilton Medical Group, A Professional Corporation, is $1,000.00 per share as provided in the shareholders' agreement contained in a Stock Subscription Agreement . . . , which is the definitive value to be used in [their community property] partition proceeding." For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Derek and Sharon were married on May 30, 1992, under the legal regime of community acquets and gains. On May 1, 2001, during the existence of the community regime, Derek, a pediatrician, purchased one share of stock in Hamilton Medical Group (HMG), a medical corporation consisting of employee physician shareholders, for $1,000.00. The stock was issued and registered in Derek's name only. On September 18, 2013, the employee/physician shareholders of HMG executed a Stock Subscription Agreement with an accompanying Shareholder Agreement, which provided, in pertinent part:

1. PURPOSE

1.1    The purpose of this Agreement is to provide for orderly continuation of the affairs of Corporation in the event of death, incapacity, disqualification or termination of employment of the Shareholders of the Corporation, or the occurrence of other events whereby Shareholder or Corporation seeks to terminate Shareholder status, including but not limited to the occurrence of events specified herein. Such purpose shall be accomplished by the purchase by the Corporation of the shares of stock held by any Shareholder to whom such event has occurred . . . and further that the said Shareholder shall agree to sell the said stock held by the said Shareholder to the Corporation, upon the occurrence of any of the events described herein.

## 2. PURCHASE AND SALE

2.1    Corporation agrees to purchase and each Shareholder agrees to sell and transfer to the Corporation Shareholder's stock in the Corporation at the time, for the consideration and in the manner set forth in this Agreement.

## 3. EVENTS REQUIRING SALE

3.1    Upon the happening of any of the following events, the affected Shareholder or said Shareholder's estate, shall sell and transfer to Corporation and Corporation shall purchase the share or shares of stock in Corporation held by such Shareholder at the same price for which said Shareholder purchased the share or shares, that price being One-thousand and No/100 ($1,000.00) Dollars per share:

(a)    The death of the Shareholder;

(b)    The suspension, revocation or cancellation of the Shareholder's right to practice medicine in the State of Louisiana;

(c)    The imposition of any restrictions or limitations by any governmental authority having jurisdiction over the Shareholder to such an extent that the Shareholder cannot engage in the professional practice of medicine;

(d)    Termination of employment with the Corporation for any reason or cause, or for no cause, as provided in the Employment Agreement between Shareholder and the Corporation, to include voluntary or involuntary termination or retirement of a Shareholder from the practice of medicine[.]

## 4. VALUATION OF STOCK

4.1    The purchase price of each share of capital stock of the Corporation shall under all circumstances be One-thousand and No/100 ($1,000.00) Dollars.  At no time and under no circumstances shall the Corporation be called upon to pay more than One-thousand and No/100 ($1,000.00) Dollars to redeem any share of stock of the Corporation.

. . . .

## 6. RESTRICTIONS ON OTHER TRANSFERS

6.1    None of the Shareholders of Corporation shall transfer, assign, hypothecate or in any way alienate or encumber any of Shareholder's shares or any right or interest therein.  All shares of stock in the Corporation in the case of sale or transfer by a Shareholder shall be to the Corporation, and shall not be made to any other person or entity other than Corporation.

Sharon refused to sign the Shareholder Agreement. Derek filed a petition for divorce and for judicial partition of community property on June 26, 2014. A judgment of divorce was rendered on October 13, 2014, terminating the Baumbourees' community property regime retroactive to the date the petition was filed. In connection with the partition, Sharon filed a subpoena duces tecum on April 29, 2015, requesting that HMG produce various documents pertaining to HMG's incorporation, finances and assets, and Derek's compensation by the corporation. On May 22, 2015, HMG filed a motion to quash the subpoena and for a protective order, asserting that the Stock Subscription Agreement executed by Derek on September 18, 2013 fixed the value of Derek's stock interest in HMG at $1,000.00, and thus, Sharon was not entitled to production of the requested documents.

On June 16, 2015, Derek filed a motion for partial summary judgment, requesting that the trial court hold that the value of the HMG stock for the purposes of the partition proceeding was $1,000.00. Derek attached to his motion a personal affidavit dated June 16, 2015, wherein he attested to the dates of his marriage to and divorce from Sharon; to his acquisition of one share of HMG stock during his marriage to Sharon; to his signing of a Stock Subscription Agreement and accompanying Shareholder Agreement on September 18, 2013, which established a stipulated stock value of $1,000.00; and to the fact that the provisions of the agreements were still in force and had not been modified or amended. Also attached to Derek's motion was an affidavit from Louise Derise, the Administrator and CFO of HMG, dated June 11, 2014. Ms. Derise attached a copy of the September 18, 2013 Stock Subscription Agreement and Shareholder Agreement to

3

her affidavit, and she stated that the agreements were "in full force and effect" and had not been amended or modified.

Sharon opposed the motion, arguing that the HMG stock was community property and that she cannot be bound by a Shareholder Agreement that she did not sign. She further argued that the Shareholder Agreement could not be used to value the HMG stock because it fixed the value of the stock only upon the occurrence of the four events, i.e., the death of a Shareholder; the suspension, revocation or cancellation of the Shareholder's right to practice medicine in Louisiana; the imposition of any restrictions or limitations of a Shareholder's ability to engage in the professional practice of medicine; or the termination of a Shareholder's employment with the Corporation, none of which had occurred. Because the Shareholder Agreement failed to mention divorce and/or partition of community property, Sharon contended that it could not be used to set the value of the stock in her and Derek's partition. Finally, Sharon argued that Louisiana law does not permit one spouse to "unilaterally declare that certain property is not community, or to establish a value for community partition purposes, without the consent of the other spouse." Sharon attached to her opposition memorandum an affidavit by Mark Shirley, a CPA, who stated that he had been asked by counsel for Sharon to provide a value to Derek's medical practice. Mr. Shirley stated that to do so, he needed to identify and quantify two "distinct intangible assets," goodwill and going concern value. According to Mr. Shirley, the fair market value of the HMG stock needed to be determined in the context of the Baumbourees' partition, but the "subjective and static stated value contained in the shareholder agreement excludes all of the necessary elements which must be considered in quantifying either the 'fair market value' or 'fair value' of the community property." Finally, Mr. Shirley stated that the only function of a stated stock value such as the one in

4

the HMG Shareholder Agreement was "to penalize the member/shareholder upon exiting the practice." Sharon also attached to her opposition a personal affidavit dated July 6, 2015, wherein she stated that she and Derek were physically separated and contemplating divorce when he tried to get her to sign the Shareholder Agreement in late 2013. At that time, Derek told her that the purpose of the document was to protect the company, that it would not affect her, and that it had nothing to do with their divorce.

Following a contradictory hearing, the trial court sustained Derek's motion for partial summary judgment and designated the judgment as final for purposes of immediate appeal.[1] Sharon appealed and is now before this court asserting that:

1. The Trial Court erred in holding, without factual basis in the Shareholder Agreement, that an arbitrary price ($1,000 - not based on any indicia of financial value) requiring sale or redemption of the ownership interest in HMG upon Derek's death, inability to practice medicine, or termination of employment, also governed the "value," determined pursuant to La. R.S. 9:2801A(4)(a), of the use and enjoyment of ownership interest while Derek continued to practice medicine with HMG.

2. The Trial Court erred in holding that a spouse in whose name an asset is registered may unilaterally, without the consent of the other spouse, by a contract which does not purport to pertain to a partition action, determine the value of community property in a partition action, thus usurping the duty to "value the assets" of the former community, which duty is assigned to the trial court by La. R.S. 9:2801A(4)(a).

3. The Trial Court erred in considering itself bound by a valuation method which is inconsistent with Louisiana law.

## DISCUSSION

Appellate courts review summary judgment motions de novo, giving no weight to the trial court's judgment. *Covington v. McNeese State Univ.*, 08-505 (La.App. 3 Cir. 11/5/08), 996 So.2d 667, *writ denied*, 09-69 (La. 3/6/09), 3 So.3d

---

[1] The trial court also granted HMG's motion to quash the subpoena filed by Sharon; that ruling is not at issue in this appeal.

5

491. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2), amended by 2015 La. Acts No. 422, § 1. The burden of proof is on the mover. La.Code Civ.P. art. 966(C)(2), amended by 2015 La. Acts No. 422, § 1.

> Unless they validly contract otherwise, spouses domiciled in Louisiana are under the legal regime of community acquets and gains. La.Civ.Code arts. 2328 and 2334. The property of married persons is either community or separate. La.Civ.Code art. 2335. Community property includes all property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse. La.Civ.Code art. 2338. The community is a patrimonial mass that includes both assets and liabilities. La.Civ.Code art. 2336 cmt. (c). Each spouse owns a present undivided one-half interest in the community property. La.Civ.Code art. 2336.

*Succession of Moss*, 00-62, pp. 4-5 (La.App. 3 Cir. 6/21/00), 769 So.2d 614, 618, *writ denied*, 00-2834 (La. 12/8/00), 776 So.2d 462.

Ownership of a thing is defined by our Civil Code. It is "the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." La.Civ.Code art. 477(A). In a partition action, "[t]he court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties." La.R.S. 9:2801(A)(4)(a). "[E]ach party shall file a sworn detailed descriptive list of all community property, the fair market value and location of each asset, and all community liabilities."

La.R.S. 9:2801(A)(1)(a). Thereafter, "[t]he court shall divide the community assets and liabilities so that each spouse receives property of an equal net value." La.R.S. 9:2801(A)(4)(b).

> Although generally either spouse acting alone may manage, control or dispose of community property, La.Civ.Code art. 2346, the Civil Code tempers this right with regard to certain property. Each spouse has the *exclusive* right to manage or encumber movables issued or registered in his or her name as provided by law. La.Civ.Code art. 2351 (emphasis added). Shares of stock are incorporeal movables. La.Civ.Code art. 473. Stock issued in the name of a spouse is subject to management by that spouse exclusively.

*Succession of Moss*, 769 So.2d at 620. "A spouse is liable for any loss or damage caused by fraud or bad faith in the management of the community property." La.Civ.Code art. 2354.

Central to each of Sharon's assignments of error is her assertion that the trial court erred in concluding that the stock in HMG had a value of $1,000.00 for the purposes of the partition. For the following reasons, we find Sharon's argument to be fundamentally flawed. In *Succession of Moss*, 769 So.2d 614, this court held that transfer restrictions affecting community property consisting of corporate stock that were contractually agreed to by one spouse are binding on the non-contracting spouse. Coury Moss, Inc. was a closely held corporation formed by William J. Moss and A. Sam Coury to operate an automobile dealership. Moss and Coury entered into Shareholders' Agreement which required that upon the death of either of them, their heirs or representatives were required to transfer any stock in excess of 25% of the total shares back to the corporation at book value. After Moss' death, his succession representative and surviving spouse argued that her shares of former community stock were not bound by the restriction. We upheld the restriction, rejecting the argument that a spouse "enjoys the contractual freedom to acquire community property but is precluded from contractually

7

regulating that acquisition." *Succession of Moss*, 769 So.2d at 619. In doing so, we reasoned:

> By their express terms, the Articles of Incorporation "bind and obligate" not only the two incorporating shareholders, but also "such other persons who may hereafter join or become associated with them or their successors." Since this restrictive contract was executed during the existence of the community and affected community property, the obligation it created is a community obligation. La.Civ.Code art. 2361; *Cutting v. Cutting*, 625 So.2d 1112 (La.App. 3 Cir.1993), *writ denied*, 93-2770 (La.1/7/94); 631 So.2d 453. Mrs. Moss' ownership interest in the stock does not give her autonomous control over the stock; rather, her interest is subject to the transfer at death restrictions in the Articles of Incorporation.

*Id.* at 621.

Later, in *Rao v. Rao*, 05-59, p. 3 (La.App. 1 Cir. 11/4/05), 927 So.2d 356, 359, *writ denied*, 05-2453 (La. 3/24/06), 925 So.2d 1232, the first circuit held that a restriction signed by a physician spouse in stockholders' agreement concerning a physician-owned corporation "establishing a stipulated value of $25,000.00 for the stock of each equal stockholder in the event of resignation, death, or termination as a stockholder, or in the event of divorce" was binding on the non-employee spouse in the context of a partition proceeding incident to their divorce. In rejecting the former wife's attempt to not be bound by the transfer restrictions, the first circuit explained:

> The evidence clearly supports the conclusion that the hypothetical value postulated by Mrs. Rao's expert accountant was largely based upon goodwill attributable to the personal qualities and patient relationships of Dr. Rao and his fellow stockholder physicians using the corporate facilities as part of their professional practice. . . . It is inappropriate to use such goodwill attributable to Dr. Rao in the valuation of community corporate stock. *See* La. R.S. 9:2801.2. *See also Preis v. Preis*, 94-442, pp. 6-7 (La.App. 3rd Cir.11/2/94), 649 So.2d 593, 595-96 and *Depner v. Depner*, 478 So.2d 532, 534 (La.App. 1st Cir.1985), *writ denied*, 480 So.2d 744 (La.1986). Although the issue has not been specifically addressed by the legislature and seems to be *res nova*, we conclude it is likewise inappropriate to incorporate goodwill attributable to the personal, professional qualities of the other physician stockholders in such valuation. *See* 16 Katherine S. Spaht and Richard D. Moreno,

*Louisiana Civil Law Treatise: Matrimonial Regimes* § 7.27 (2nd ed.1997; 2004 pocket part).

Stock transfer restrictions do not affect ownership of the stock; they merely qualify the privilege of disposition of the stock. *Mestayer v. Williams*, 569 So.2d 1102, 1106-7 (La.App. 3rd Cir.1990). Because stock transfer restrictions such as the sell/buy provisions at issue do not alter the nature of the legal matrimonial regime or the classification of stock acquired during marriage as community property, they do not constitute prohibited matrimonial agreements under La. C.C. art. 2329. *Guidry v. Guidry*, 01-1615, p. 4 (La.App. 3rd Cir.10/30/02), 830 So.2d 570, 572. The latter case involved the divorce of an attorney shareholder of a legal corporation. He and his wife had executed a shareholders agreement and stock subscription agreement which set forth an agreed-upon method of disposition and valuation of shareholder stock in the event of divorce. The appellate court found that the agreements were "valid interspousal contracts which are binding in that we find no derogation of law or public policy." *Id.*

The evidence shows that the object of the Amended Stockholders Agreement's sell/buy and stock valuation provisions was to establish a stipulated, binding value of equal stock interests in a close corporation with a specialized purpose, in the event of any stockholder's death, termination of ownership, or divorce, and to effect an orderly transfer of ownership according with the corresponding change in ownership interest in the medical group. That object is not contrary to public policy; thus, it is not absolutely null as *contra bonos mores*. *See* La. C.C. arts. 7, 2030. *See also* 7 Glenn G. Morris and Wendell H. Holmes, *Louisiana Civil Law Treatise: Business Organizations* § 29.10 (1999).

Shares of stock issued in the name of a spouse are subject to management by that spouse exclusively. La. C.C. art. 2351, Revision Comment (a) (1979). *See also* La. C.C. art. 2352. The undisputed evidence in the record shows that the stock certificate at issue, evidencing ownership of fifty shares of common stock of Louisiana Endoscopy Center, Inc., was issued in Dr. Rao's name only. Thus, Dr. Rao clearly had the right to execute both the original and the Amended Stockholders Agreement, thereby subjecting the stock to the terms of the transfer restrictions and the stipulated stock value, without Mrs. Rao's written assent. *Succession of Moss*, 00-62, p. 10 (La.App. 3rd Cir.6/21/00), 769 So.2d 614, 620, *writ denied*, 00-2834 (La.12/8/00), 776 So.2d 462. A stock transfer agreement which is unambiguous, clearly sets forth its terms, and is executed by capable parties is enforceable. *Id.*, 00-62 at p. 10, 769 So.2d 614, 620-21. The sell/buy provisions of Articles IV and VI were valid and binding stock transfer restrictions, and clearly governed the valuation of the stock.

*Id.* at 365-67.

We find the salient facts of the instant case indistinguishable from the facts presented in *Rao*. In both instances, a non-employee spouse is attempting to avoid being bound, in the context of a community property partition, by a stock valuation agreed to by her physician/shareholder ex-spouse with regard to stock in a medical corporation owned by him and other physician stockholders. As in *Rao*, although the stock issued in the name of the physician/shareholder spouse only is a community asset, the physician/shareholder spouse had the exclusive right to manage that stock. Thus, the fact that Sharon did not sign the Shareholder Agreement does not prevent the application of the stock valuation contained therein. Further, as noted by the *Rao* court, the purpose of the valuation of the stock in a "close corporation," such as a medical practice, is "not contrary to public policy," but instead has the purpose of effecting "an orderly transfer of ownership" should one of the physician shareholders have to leave the practice. *Rao*, 927 So.2d at 366. In *Rao*, the first circuit held that "[i]t is inappropriate to use such goodwill attributable to Dr. Rao in the valuation of community corporate stock" and "it is likewise inappropriate to incorporate goodwill attributable to the personal, professional qualities of the other physician stockholders in such valuation." *Id.* at 365-66. Accordingly, the assertions made by CPA Mark Shirley in the affidavit submitted by Sharon regarding the need to quantify the goodwill or going concern value of HMG or any of its physician shareholders are irrelevant as it would be inappropriate to incorporate such values in the Baumbourees' partition. Finally, Sharon would have a remedy under La.Civ.Code art. 2354 if she were to prove that Derek acted fraudulently or in bad faith in signing the Shareholder Agreement, but no such proof was made in this case. Along those lines, we note that if Derek is forced to sell his one share of HMG stock back to the corporation upon the

10

occurrence of any of the triggering events found in Section 3.1 of the Shareholder Agreement, he will only be paid $1,000.00 as fixed in that agreement.

After having performed a de novo review, we are convinced that the law supports Derek's position and, thus, we conclude that partial summary judgment was properly granted in his favor.

## DECREE

The judgment of the trial court granting partial summary judgment in favor of Derek Blaine Baumbouree is affirmed. All costs of this appeal are assessed to Sharon Meche Baumbouree.

**AFFIRMED**.

DEREK BLAINE BAUMBOUREE

VERSUS

SHARON MECHE BAUMBOUREE


**Saunders, J., dissents and assigns written reasons.**

I disagree with the majority opinion that Sharon's argument that the trial court erred in concluding that the stock in HMG had a value of $1,000.00 for the purposes of partition is "fundamentally flawed."

> Unless they validly contract otherwise, spouses domiciled in Louisiana are under the legal regime of community acquets and gains. La.Civ.Code arts. 2328 and 2334. The property of married persons is either community or separate. La.Civ.Code art. 2335. Community property includes all property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse. La.Civ.Code art. 2338. The community is a patrimonial mass that includes both assets and liabilities. La.Civ.Code art. 2336 cmt. (c). Each spouse owns a present undivided one-half interest in the community property. La.Civ.Code art. 2336.

*Moss*, 769 So.2d at 618.

In general, community property may be managed, controlled, or disposed of by either spouse acting alone. La.Civ.Code art. 2346; *Moss*, 769 So.2d 614. However, "[a] spouse has the exclusive right to manage, alienate, encumber or lease movables issued or registered in his name as provided by law." La.Civ.Code art. 2351. Shares of stock are incorporeal movables, La.Civ.Code art. 473, and may be managed exclusively by the spouse in whose name they are registered. La.Civ.Code art. 2351 cmt. (a); *Moss*, 769 So.2d 614.

Restrictions on the transfer of corporate stock are valid. *Louisiana Weekly Pub'g. Co. v. First Nat'l. Bank of Commerce*, 483 So.2d 929 (La.1986). Transfer restrictions do not affect the ownership of the stock in the community, and the spouse in whose name they are not registered still has an undivided one-half interest in it. See e.g. *Messersmith v. Messersmith*, 229 La. 495, 86 So.2d 169; *Moss*, 769 So.2d 614. Instead, such restrictions "merely qualify the privilege of disposition of the stock." *Rao v. Rao*, 927 So.2d 356 (La.App. 1 Cir. 2005), *writ denied*, 925 So.2d 1232 (La. 2006).

In light of these principles of law, it is clear that a spouse in whose name stock is registered has the authority to execute a stock subscription agreement containing transfer restrictions. Thus, there is no doubt that Derek had the exclusive authority to execute the stock subscription agreement restricting the transfer of the stock upon his death, inability to practice medicine, or termination of employment back to the corporation for the agreed upon price and that such a restriction is valid. However, at the crux of the instant dispute is Derek's assertion that, because the terms of the stock subscription agreement prohibits him from transferring the stock to any other person or entity besides the corporation for the agreed upon price of $1,000.00, such is the value that must be used for the purposes of partition. I disagree.

Ownership of a thing is defined by our Civil Code. It is "the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." La.Civ.Code art. 477(A). In a partition action, the assets of the community must be valued. La.R.S. 9:2801(4)(a). Then, each of the assets is allocated or assigned to the spouses. "The court shall divide the

2

community assets and liabilities so that each spouse receives property of an equal net value." La.R.S. 9:2801(4)(b).

We find no authority that supports Derek's assertion that the value of the stock for the purposes of partition following a divorce of the shareholder spouse is $1,000.00 because the stock subscription agreement requires the stock be transferred to the corporation for the price of $1,000.00 in the event that the shareholder dies, becomes unable to practice medicine, or terminates his employment with HMG. The stock agreement certainly sets the value of the disposition of the stock in the enumerated circumstances. However, the stock subscription agreement does not purport to value the stock except in the event of its disposition in those limited circumstances. In other words, the agreement does not purport to set the value of the use and enjoyment of the stock, but only the value of its disposition should Derek die, become ineligible to practice medicine, or terminate his employment with HMG.

Ownership of the stock in the instant matter inured to Derek a multitude of benefits and, thus, had value to Derek outside of a disposition in the few enumerated circumstances. In opposition to Derek's motion, Sharon submitted the affidavit of Mark Shirley, CPA, which identifies "[t]wo distinct intangible assets: [that] require identification and quantification" in the partition action. These assets are goodwill and going concern value. Counsel for Derek submitted no evidence to controvert the affidavit of Mr. Shirley. These assets must be valued and partitioned to determine the value of the corporation and, thus, Derek's interest in it as a shareholder. See *Landry v. Simon*, 98-1386 (La.App. 3 Cir. 3/17/99), 732 So.2d 587, *writ denied*, 99-1050 (La. 5/28/99), 743 So.2d 672; *McDonald v. McDonald*, 40,035 (La.App. 2 Cir. 8/17/05), 909 So.2d 694. Moreover, ownership of the HMG stock gives the shareholder voting rights, a right to receive dividends

3

or distributions, and a right to receive a share of the proceeds upon liquidation. See Louisiana Business Corporation Act, La.R.S.12:1-101 et. seq. Each of these rights inures some benefits to Derek, and such must be valued for the purposes of the partition.

My conclusion is not without authority. In *Borrello v. Borrello*, 614 So.2d 91 (La.App. 4 Cir. 1992), *writ denied*, 616 So.2d 706 (La.1993), a former spouse of a partner in a law firm sought discovery of certain financial documents pertaining to the law firm for the purpose of valuing the partner spouse's interest in the firm. The law firm moved to quash a subpoena *duces tecum* requesting production of the documents and the motion was granted. On appeal, the former wife asserted that the trial court erred in denying discovery of the requested documents on the grounds that they were necessary to determine the value of the former husband's partnership interest. The law firm argued that the former wife was bound by the partnership agreement, which purported to value the former husband's interest in the partnership. The fourth circuit held that the former wife "should be permitted to discover information necessary for her to establish the value of her husband's partnership interest beyond the value set forth in the partnership agreement." *Id*. at 94.

In *Fastabend v. Fastabend*, 606 So.2d 794, 798 (La.App. 3 Cir.), *writ denied*, 609 So.2d 231 (La.1992), the former husband, a physician, argued that the trial court erred in including the accounts receivable of a medical practice in calculating the value of his interest in the medical partnership, on the grounds that the partnership agreement provided that "[n]o partner shall have or own any interest nor have any claim or right in and to the accounts receivable or any other asset of the partnership." This court rejected that argument, finding that the accounts receivable were an asset of the partnership and must be valued to

determine the value of the partnership, in order to determine the former husband's interest in that partnership. This court noted, in particular, that nothing in the partnership agreement prohibited the accounts receivable from being valued in such a manner.

In the instant matter, it is clear that the Shareholder's Agreement establishes the value for the disposal of the stock in the event of the death of a shareholder, the inability of the shareholder to practice medicine, and termination of the shareholder's employment with the corporation. However, none of these circumstances are present in the instant matter. Thus, the trial court must ascertain the value of the stock outside of its disposition. Accordingly, I respectfully dissent as I would remand to the trial court for further proceedings.