769 So.2d 614 (2000)
SUCCESSION OF William J. MOSS.
No. 00-62.
Court of Appeal of Louisiana, Third Circuit.
June 21, 2000.
Rehearing Denied September 13, 2000.
Writ Denied December 8, 2000.
*615 Lee H. des Bordes, Jr., Gary L. Boland, Baton Rouge, LA, Counsel for Defendant, A. Sam Coury.
John E. Conery, Franklin, LA, Counsel for Plaintiffs, Sharon K. Coury Moss and William John Moss.
Richard Ernest Santora, Herschel C. Adcock, M. Allyn Stroud, Brook, Morial, Cassibry, Fraiche & Pizza, New Orleans, LA, Kenneth A. Goodwin, New Orleans, LA, Counsel for Plaintiff, John T. Landry, Succession Executor of the Estate of William John Moss.
Peter C. Piccione, Sr., Lafayette, LA, Gary E. Theall, Theall & Fontana, Abbeville, LA, Counsel for Plaintiff, Sharon K. Coury Moss.
Kenneth L. Hix, Lafayette, LA, Counsel for Defendants, Robert B. Bernard, Sr., and James S. Fitzgerald, Sr., as Trustees of the J. Alfred and Pearl F. Bernard Trust.
*616 (Court composed of Judge HENRY L. YELVERTON, Judge ULYSSES GENE THIBODEAUX and Judge ELIZABETH A. PICKETT).
THIBODEAUX, Judge.
We again consider the effect of transfer restrictions on the Moss estate's shares of Coury Moss, Inc. stock. The trial court awarded Sharon K. Coury Moss, the surviving spouse of the deceased shareholder, William J. Moss, and administratrix of his estate, ownership of one-half of the stock presently held by the Succession of William J. Moss, but found that she had no right to stock not yet in the succession. The appellant, A. Sam Coury, also a shareholder in the corporation, argues that the trial court erred in concluding that Mrs. Moss owns one-half of Mr. Moss' stock and petitions this Court to determine the nature of the ownership of that stock. We amend and affirm in part the trial court's judgment and reverse in part.

I.

ISSUE
We shall determine the nature of the surviving spouse's interest in Coury Moss, Inc. stock owned by and owed to her deceased husband.

II.

FACTS
In 1979, William J. Moss and A. Sam Coury agreed to form a corporation, Coury Moss, Inc., for the purpose of operating an automobile dealership. On June 28, 1979, they executed a Shareholders' Agreement which provided that at the corporation's inception, one thousand shares of stock would be issued of which Mr. Coury would own seventy-five percent and Mr. Moss would own twenty-five percent. The Agreement further provided that Mr. Moss would buy two-thirds of Mr. Coury's stock in the corporation over a period of five years, from December 1980-1984 at book value. The Agreement identified the corporation as a "closed corporation" and required that upon the death or disability of any shareholder, his stock must be offered for sale to the remaining shareholder for book value.
On July 3, 1979, the shareholders executed Articles of Incorporation. The Articles mandated, inter alia, that they applied to the shareholders and their transferees or heirs, and placed certain restrictions on the sale or transfer of the corporation's stock. Specifically, Article X mandated that any shareholder wishing to sell his stock must first offer it to the corporation for book value. Article XI required that upon the death or disability of any shareholder, his heirs or representatives must transfer his stock, except twenty-five percent of the corporation's stock, to the corporation at book value.
Pursuant to the Shareholders' Agreement, Mr. Coury transferred one hundred shares of stock per year to Mr. Moss from 1980-1982, for a total of three hundred shares. In 1983, he refused to transfer additional shares due to Mr. Moss' alleged breaches of the Agreement. Mr. Moss brought suit against Mr. Coury in November 1985 to compel the transfer of the remaining two hundred shares. Mr. Coury answered the petition and reconvened seeking a cancellation of the Agreement and return of the three hundred shares transferred thereunder. Mr. Moss died in 1989 and his succession representative and surviving spouse, Sharon Moss, were substituted as plaintiffs. After a myriad of trials and appeals[1], this Court *617 held in Moss v. Coury, 97-640 (La.App. 3 Cir. 12/10/97); 704 So.2d 1248, writ denied, 98-783 (La.5/29/98); 720 So.2d 340, that Mr. Moss had not breached any prerequisites to the stock transfer; Mr. Coury breached the Agreement by not making the transfer; and, the Succession of William J. Moss was entitled to specific performance under the Agreement. The Court ordered Mr. Coury to transfer the remaining two hundred shares owed under the Agreement to the Succession of William J. Moss at the agreed price, opining that Mr. Coury's right to repurchase the stock under the Articles of Incorporation was contingent upon the initial transfer.
Mrs. Moss petitioned the trial court to declare that under Louisiana community property law, she is entitled to ownership of one-half of the stock currently held by and owed to her husband's succession. She asked that court to find that her stock ownership was not subject to the transfer upon death restrictions in the Articles of Incorporation.
The trial court partially granted the motion for the declaratory judgment, decreeing that "Sharon K. Moss is the rightful owner of 275 shares or one-half (½) of those 550 shares of Coury Moss, Inc. stock currently held and voted by the Succession of William J. Moss." The trial court denied that part of the motion in which Mrs. Moss sought to be declared owner of one-half of the two hundred shares Mr. Coury owes to the succession under the Shareholders' Agreement based on its finding that the claim was premature because those shares had not yet been transferred to the succession. Mr. Coury brought this appeal.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court may not set aside a trial court's finding of fact absent manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). However, when the trial court makes an error of law, the manifest error standard no longer applies. The Supreme Court of Louisiana has established that in the event of legal error:
the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo.

Evans v. Lungrin, 97-541, pp. 6-7, (La.2/6/98); 708 So.2d 731, 735 (citations omitted).
The trial court declared that Mrs. Moss owned one-half of the Coury Moss, Inc. stock currently held by the succession. The judgment did not ascertain the nature of that ownership. Further, the trial court erroneously concluded that it could not partition stock owed to the succession. The trial court's apparent misunderstanding of a surviving spouse's rights upon the termination of the community occasioned legal error. Congruent with the Louisiana Constitution's grant of appellate jurisdiction to review facts in civil cases coupled with the strong public policy of fostering judicial economy, we will review the case de novo from the entire record and render a judgment on the merits. See Citgo Petroleum Corp. v. Yeargin, Inc., 95-1574 (La.App. 3 Cir. 2/19/97); 690 So.2d 154, writs denied, 97-1223 (La.9/19/97); 701 *618 So.2d 169 and 97-1245 (La.9/19/97); 701 So.2d 170.

Community Property
Unless they validly contract otherwise, spouses domiciled in Louisiana are under the legal regime of community acquets and gains. La.Civ.Code arts. 2328 and 2334. The property of married persons is either community or separate. La. Civ.Code art. 2335. Community property includes all property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse. La.Civ.Code art. 2338. The community is a patrimonial mass that includes both assets and liabilities. La.Civ.Code art. 2336 cmt. (c). Each spouse owns a present undivided one-half interest in the community property. La.Civ.Code art. 2336.
Obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations with few exceptions. La. Civ.Code art. 2361; Bridges v. Bridges, 96-1191 (La.App. 3 Cir. 3/12/97); 692 So.2d 1186. This presumption is rebuttable upon proof by clear and convincing evidence that the debt was not incurred for the benefit of the community. La.Civ. Code art. 2363; Keene v. Reggie, 96-740 (La.App. 3 Cir. 10/22/97); 701 So.2d 720. We find no such evidence in the record.
A debt owed to a corporation as a result of a conventional obligation executed by a spouse during the existence of the community is a community liability. Krielow v. Krielow, 93-2539 (La.4/11/94); 635 So.2d 180. As a community obligation, the debt is subject to equal division during the partition of the community. Both rights and obligations arising from contracts are heritable. La.Civ.Code art.1984. Obligations incurred by a spouse during the community regime may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation. La.Civ.Code art. 2357.
Death of one of the spouses terminates the legal regime of community property. La.Civ.Code art. 2356. Neither the community nor things of the community may be judicially partitioned prior to the termination of the regime. La.Civ.Code art. 2336. The surviving spouse continues to be a co-owner of an undivided one-half interest in community assets until they are partitioned. Cf. Hare v. Hodgins, 586 So.2d 118 (La.1991).
When partitioning community property, the court may divide particular assets or liabilities equally or unequally, taking into consideration the nature and source of the asset or liability, the economic condition of the spouses, and any other relevant circumstances. La.R.S. 9:2801(4)(c). "The court is required to divide the community assets and liabilities so that each spouse receives property of an equal net value." Hare, 586 So.2d at 123 (citing La.R.S. 9:2801(4)(b)).
Because the patrimonial mass of community property includes both assets and liabilities, it is clear that Mrs. Moss owns an undivided one-half interest in the shares of Coury-Moss, Inc. stock currently held by the Succession of William J. Moss. This fact is not in dispute. Mrs. Moss asserts that she is also entitled to one-half of the remaining two hundred shares owed by Mr. Coury after the succession pays the purchase price. The trial court erroneously concluded that it could not partition this property. We will do so now. We find that Mrs. Moss is also entitled to one-half of the two hundred shares owed to the Succession of William J. Moss. Likewise, she is responsible for paying one-half of the purchase price for these shares in her individual capacity and not as testamentary executrix.
Having resolved the ownership of the community property, we shall now ascertain the nature of that ownership.

*619 Stock Transfer Restrictions
Two contracts govern the transfer of stock at issue here. These are the Shareholders' Agreement and the Articles of Incorporation. Regarding the initial transfer of stock from Mr. Coury to Mr. Moss, the Shareholders' Agreement provides:
Unless otherwise agreed between the parties hereto the corporation is to be a closed corporation and if either party should desire to sell his stock or if either party should die or become disabled, in that event, his stock must first be offered to the remaining shareholder, at a price equal to the book value of such stock, but not less than costs basis thereof, if the book value should be less than costs.
Article XI of the Articles of Incorporation, which encompasses the transfer upon death provisions, provides:
Notwithstanding the provisions of Article X, in the event of death or total disability of any stockholder of this corporation owing [sic] at that time more than 25% of stock, such stockholder, his heirs or legal representatives is bound and obligated to transfer, at book value, to the corporation, all of his stock, provided he or his legal heirs or representatives may retain up to 25% of the stock of this corporation.
This Court determined in Moss v. Coury, 97-640, 704 So.2d 1248, that the stock transfer from Mr. Coury to Mr. Moss was regulated by the Shareholders' Agreement but that the transfer upon death provisions therein were modified by the Articles of Incorporation. Pursuant to those Articles, upon the death of a shareholder (Moss), his heirs or representatives must transfer his stock to the corporation for book value, reserving up to twenty-five percent of the corporation's stock for themselves.

Effect of the Stock Transfer Restrictions
The trial court did not resolve whether Mrs. Moss' stock ownership was subject to the transfer restrictions. We shall now decide this issue.
Mrs. Moss asserts that she is the owner of one-half of the stock to which her husband was entitled under the Shareholders' Agreement but that her ownership is not subject to any restrictions. Basically, she seeks to enforce the express terms of the Shareholders' Agreement while simultaneously avoiding the terms of the Articles of Incorporation. When her argument is considered in light of these contracts, we understand her position to be that each spouse enjoys the contractual freedom to acquire community property but is precluded from contractually regulating that acquisition.
In support of her argument, Mrs. Moss cites Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956) and Mestayer v. Williams, 569 So.2d 1102 (La.App. 3 Cir. 1990). Her contention is that under Messersmith, restrictive provisions in a corporation's charter cannot negate a spouse's interest as co-owner in community and, thus, she is entitled to exclusive management and control of her vested interest in one-half of her husband's stock. She cites Mestayer to show that this Court recently followed the Messersmith holding.
Mr. Coury argues that Messersmith, 229 La. 495, 86 So.2d 169, and Mestayer, 569 So.2d 1102, do not invalidate the effect of the Articles of Incorporation on a surviving spouse's one-half interest in corporate stock. His position is that those cases are distinguishable because: they concerned the division of community property after divorce; neither the husbands nor wives in those cases were parties to the restrictive contracts; and those transfer restrictions applied to the sale of stock (requiring that the stock first be offered to the corporation) and not to transfer upon death. He concludes that those courts did not invalidate the stock restrictions and that those wives would be bound by the transfer restrictions *620 if they attempted to sell the stock.
In Messersmith, 229 La. 495, 86 So.2d 169, the court was asked to partition community property following a divorce. The court decreed that the two hundred twenty-five shares of stock in Woodward-Wight & Co., Ltd. should be equally divided between the parties. The husband, a Woodward-Wight employee, argued that the stock should not be divided in kind, but that he should be allowed to retain all of the stock and pay his wife one-half of its book value. He relied upon the provision in the Woodward-Wight charter which provided that before any stockholder could sell his stock, he must first offer it to his co-shareholders or to the officers of the corporation. The husband argued that the restrictive provisions of the charter prevented the recognition of the wife's ownership of the stock and prevented in kind delivery of the stock. After observing that spouses cannot contract during the marriage to alter the effect of the community property laws, the court held that the restrictive provisions could not negate the wife's interest as a co-owner and as a co-owner in community, she was entitled to be recognized as owner of one-half of the stock and to obtain the exclusive management and control of her vested interest.
The Louisiana Supreme Court interpreted the Messersmith holding in T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975). The court explained that the Messersmith case stands for the proposition that restrictive provisions in a corporate charter cannot affect the community status of stock purchased during the marriage nor can they deprive a spouse of her one-half interest in the community. The court went on to opine, "This holding means that in the case at bar the stipulations of the plans cannot alter the wife's right as a partner in community." Id. at 843.
In Mestayer, 569 So.2d 1102, this court considered whether under Messersmith, 229 La. 495, 86 So.2d 169, and T.L. James & Co., Inc., 332 So.2d 834, stock awarded to an employee-husband as part of an employee incentive plan was community property despite restrictive provisions in the corporation's stock plan. Concluding that the stock was community property, the court reasoned that stock restrictions do not affect ownership; instead, they merely qualify the privilege of dealing with the stock.
These cases guide our determination that a surviving spouse owns a one-half interest in stock her deceased husband acquired during their marriage. The cases do not reach the paramount issue in this case concerning the nature of the spouse's ownership.
Although generally either spouse acting alone may manage, control or dispose of community property, La.Civ. Code art. 2346, the Civil Code tempers this right with regard to certain property. Each spouse has the exclusive right to manage or encumber movables issued or registered in his or her name as provided by law. La.Civ.Code art. 2351 (emphasis added). Shares of stock are incorporeal movables. La.Civ.Code art. 473. Stock issued in the name of a spouse is subject to management by that spouse exclusively. La.Civ.Code art. 2351 cmt. (a); Ackel v. Ackel, 595 So.2d 739 (La.App. 5 Cir.1992). Applying these principles to the facts here, it is clear that Mr. Moss had the right to execute the Articles of Incorporation thereby making stock issued in his name subject to transfer restrictions in the event of his death.
Transfer restrictions placed on the mortis causa sale of stock are valid. Louisiana Weekly Pub. Co., Inc. v. First Nat'l Bank of Commerce, 483 So.2d 929 (La.1986). Although restrictions on a shareholder's right to transfer his shares are strictly construed, they are enforced according to their express provisions. Id. Courts are constrained to implement a stock transfer agreement which is unambiguous, *621 clearly sets forth the terms of the agreement, and was executed by capable parties. See Barras & Breaux v. Champeaux, 526 So.2d 1231 (La.App. 3 Cir. 1988).
By their express terms, the Articles of Incorporation "bind and obligate" not only the two incorporating shareholders, but also "such other persons who may hereafter join or become associated with them or their successors." Since this restrictive contract was executed during the existence of the community and affected community property, the obligation it created is a community obligation. La.Civ.Code art. 2361; Cutting v. Cutting, 625 So.2d 1112 (La.App. 3 Cir.1993), writ denied, 93-2770 (La.1/7/94); 631 So.2d 453. Mrs. Moss' ownership interest in the stock does not give her autonomous control over the stock; rather, her interest is subject to the transfer at death restrictions in the Articles of Incorporation. See Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461 (La.1991).

Community Property Partition
We now partition the five hundred fifty shares of Coury Moss, Inc. stock currently held by the Succession of William J. Moss and divide the stock equally between the succession and Mrs. Moss individually. We also equally divide the two hundred shares owed by Mr. Coury to the succession pursuant to the Shareholders' Agreement. The amount owed to Mr. Coury for the remaining two hundred shares is to be paid by both the succession and Mrs. Moss in her individual capacity, one-half of the sum by each. After this payment is made, Mr. Coury must transfer the remaining two hundred shares he owes, one hundred shares to Mrs. Moss and one hundred shares to the succession. The seven hundred fifty shares will be divided evenly, with Mrs. Moss holding three hundred seventy-five shares and the succession holding three hundred seventy-five shares.
The transfer upon death provisions in the Articles of Incorporation apply to all of the Coury Moss, Inc. stock held by both Mrs. Moss and the succession. These restrictions have been triggered by Mr. Moss' death and are now applicable. The restrictions require the heirs and representatives of a deceased shareholder to transfer the shareholder's stock to the corporation for book value, reserving up to twenty-five percent of the corporation's stock for themselves.
Of the seven hundred fifty shares at issue here, the succession and Mrs. Moss may retain a total of twenty-five percent of the corporation's stock, two hundred fifty shares, and must transfer five hundred shares to Coury Moss, Inc. Consistent with Louisiana community property law, we hereby divide this obligation equally. Mrs. Moss is entitled to keep one hundred twenty-five shares of Coury Moss, Inc. stock and must transfer two hundred fifty of her shares to the corporation for book value. Similarly, the succession may keep one hundred twenty-five shares of Coury Moss, Inc. stock and must transfer two hundred fifty shares to the corporation for book value. The shares they retain will continue to be subject to the Shareholders' Agreement and the Articles of Incorporation.

IV.

CONCLUSION
Therefore, we affirm that portion of the trial court judgment declaring Mrs. Moss the owner of her one-half interest in the stock; we reverse that part of the judgment which declined to assign the stock owed under the Shareholders' Agreement; we partition the stock equally between Mrs. Moss and the Succession of William J. Moss; and we find that the stock held by both is subject to the transfer restrictions in the Shareholders' Agreement and the Articles of Incorporation.
AMENDED IN PART AND, AS AMENDED, AFFIRMED IN PART; *622 REVERSED IN PART; AND RENDERED.
NOTES
[1] Moss v. Coury, 602 So.2d 175 (La.App. 3 Cir.1992); Moss v. Coury, 613 So.2d 270 (La. App. 3 Cir.1992), writ denied, 614 So.2d 1259 (La.1993); Coury v. Moss, 613 So.2d 272 (La. App. 3 Cir.1992), writ denied, 614 So.2d 1259 (La.1993); Coury v. Moss, 613 So.2d 273 (La. App. 3 Cir.1992), writ denied, 614 So.2d 1259 (La.1993); Moss v. Coury, 613 So.2d 274 (La. App. 3 Cir.1992), writ denied, 614 So.2d 1259 (La.1993); Moss v. Coury, 97-640 (La.App. 3 Cir. 12/10/97); 704 So.2d 1248, writ denied, 98-783 (La.5/29/98); 720 So.2d 340.