JUDE G. GRAVOIS, Judge.
IgPlaintiff Judith A. Funderburg appeals the trial court’s grant of summary judgment in favor of defendant, Superior Energy Services, Inc. (“Superior”), dismissing her claim against Superior for the tort of conversion of certain stock options that were awarded to her in a community property partition agreement she entered into with her former husband, Charles Funder-burg. After thorough consideration of the record and the applicable law, for the reasons that follow, we affirm the trial court’s grant of summary judgment in favor of Superior.

FACTS AND PROCEDURAL BACKGROUND

Charles Funderburg and Judith Funder-burg were divorced in April of 2003 after almost 29 years of marriage. During their marriage, the Funderburgs lived under the legal regime of community property. In September of 2003, they entered into a community property partition agreement, which was homologated and approved by the trial court assigned to their divorce proceeding through a consent judgment rendered on September 26, 2003. In the partition agreement, Mr. |sFunderburg granted Mrs. Funderburg “[a]ny and all stock options of Superior Energy Services, Inc., registered in the name of CHARLES PETER FUNDERBURG.” These stock options had been granted to Mr. Funder-burg in a Stock Option Agreement between Superior and Mr. Funderburg dated July 15, 2000. Mr. Funderburg received the stock options as a result of his employment with Superior. The stock options were exercisable until July 15, 2005.[1]
In February of 2004, Mrs. Funderburg contacted Superior and inquired about the stock options. Superior initially refused to send Mrs. Funderburg any information about the stock options because they had been granted to Mr. Funderburg and remained in his name on the company records. On February 17, 2004, at Superior’s *1150 request, Mrs. Funderburg faxed to Julie Isacks, an employee of Superior, a portion of the partition agreement, including the part that referenced the transfer of the stock options to her. On that same date, Ms. Isacks faxed a copy of the Stock Option Agreement to Mrs. Funderburg. She gave it to her financial advisor. She did not contact Superior further at that time regarding the Stock Option Agreement or the stock options.
On August 30 and 31, 2004, Mr. Funder-burg exercised the stock options, in contravention of the partition agreement and the consent judgment, netting him $12,417.41.[2] In early September of 2004, Mrs. Funder-burg learned that Mr. Funderburg had exercised the stock options. She subsequently filed this lawsuit against Superior for conversion. Specifically, Mrs. Funder-burg claims in her suit that she was the owner of the stock options in question through the partition agreement and the consent judgment, and that Superior illegally converted the stock options by allowing Mr. Funderburg to exercise them. After Superior |4prevailed on an exception of non-joinder of an indispensable party, Mrs. Funderburg filed a supplemental and amending petition adding Mr. Funderburg as a party-defendant to her lawsuit.
In due course, Mrs. Funderburg filed a Motion for Partial Summary Judgment seeking a ruling from the trial court that a non-assignability clause contained in the Stock Option Agreement did not bar the transfer of the stock options to her through the partition agreement, nor her right to subsequently exercise the stock options. Superior countered with its own Motion for Summary Judgment, asserting that because the stock options granted to Mr. Funderburg were non-transferable, Mrs. Funderburg never obtained the right to instruct Superior as to their exercise, and thus there could be no conversion. The trial court heard both motions on November 11, 2009, and, after taking the matter under advisement, rendered a judgment on December 3, 2009 denying Mrs. Funderburg’s motion and granting Superior’s motion. The trial court issued written reasons for judgment on December 21, 2009. This timely appeal followed.[3]
On appeal, Mrs. Funderburg argues that the trial court erred by concluding that the stock options were non-transferable. She argues that the trial court erred in relying on In re Succession of Moss, 00-62 (La. App. 3 Cir. 6/21/00), 769 So.2d 614, writ denied, 00-2834 (La.12/8/00), 776 So.2d 462, where the Third Circuit held that restrictions on stock transfers in a closely held corporation are binding on a non-contracting spouse as a community obligation, which case she argues is distinguishable from this case. She also argues that Mr. Funderburg was enjoined from exercising the stock options as a result of various temporary restraining orders and injunctions she obtained against Mr. Fun-derburg that she sent to Superior. Mrs. Funderburg also argues that both the Stock Option Agreement and |sthe Stock Incentive Plan under which it was issued allow for the transfer of the stock options within the context of a community property partition. Finally, Mrs. Funderburg argues that the trial court erred in interpreting LSA-C.C. art. 2653, claiming that her alleged lack of notice of the non-transfer *1151 ability clause contained in the Stock Option Agreement made the non-transferability clause unenforceable as to her. Mrs. Funderburg concludes that there are genuine issues of material fact, thereby precluding the rendering of summary judgment herein in favor of Superior.

ANALYSIS

In determining whether summary judgment is appropriate, the appellate court reviews evidence de novo. Under such standard, the appellate court looks at pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, in making an independent determination that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law.[4] In conducting this de novo review, we are guided by the burdens of proof imposed upon a movant in a motion for summary judgment, which are set forth in LSA-C.C.P. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Superior’s Motion for Summary Judgment asserted that it was entitled to judgment as a matter of law because Mrs. Funderburg will not be able to meet her | fiburden of proving the necessary “posses-sory interest” element of conversion. Superior argued that the non-transferability clause contained in the Stock Option Agreement precluded the transfer of the stock options to Mrs. Funderburg, the partition agreement and the consent judgment notwithstanding, and thus she never obtained the right to exercise the stock options.
The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner’s rights.[5] Any wrongful exercise or assumption of authority over another’s goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.[6]
Louisiana civil law conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.[7]
The Stock Option Agreement granted Mr. Funderburg the “right, privilege and option” to purchase a certain number of shares of Superior stock at a specified price per share for a period of five years *1152 from the date of issue. Paragraph VI of the Stock Option Agreement, entitled “Non-Transferability,” states:
The Option granted hereby may not be transferred, assigned, pledged or hy-pothecated in any manner, by operation of law or otherwise, other than by will or by the laws of descent and distribution and shall not be subject to execution, attachment or similar process.
|7The Stock Option Agreement was issued under the authority of Superior’s 1999 Stock Incentive Plan. The Stock Option Agreement references the Stock Incentive Plan both in its title and in several of its paragraphs. Particularly, Paragraph VII of the Stock Option Agreement, entitled “Inconsistent Provisions,” states:
The Option granted hereby is subject to the provisions of the [Stock Incentive] Plan as in effect on the date hereof and as it may be amended. In the event any provision of this Agreement conflicts with such a provision of the [Stock Incentive] Plan, the [Stock Incentive] Plan provision shall control.
The Stock Incentive Plan was administered by “the compensation committee of the Board of Directors of Superior, or by a subcommittee of the compensation committee” (hereinafter, the “Plan Committee”). Section 10.2 of the Stock Incentive Plan provides:
10.2 TRANSFERABILITY OF INCENTIVES. Options granted under the Plan shall not be transferable except:
(A) by will;
(B) by the laws of descent and distribution; or
(C) in the case of stock options only, if permitted by the Committee and so provided in the Incentive Agreement [i.e., the Stock Option Agreement] or an amendment thereto, (i) pursuant to a domestic relations order, as defined in the Code, (ii) to Immediate Family Members, (iii) to a partnership in which Immediate Family Members, or entities in which Immediate Family Members are the sole owners, members or beneficiaries, as appropriate, are the only partners, (iv) to a limited liability company in which Immediate Family Members, or entities in which Immediate Family Members are the sole owners, members or beneficiaries, as appropriate, are the only members, or (v) to a trust for the sole benefit of Immediate Family Members. “Immediate Family Members” shall be defined as the spouse and natural or adopted children or grandchildren of the participant and their spouses. To the extent that an incentive stock option is permitted to be transferred during the lifetime of the participant, it shall be treated thereafter as a non-qualified stock option.

Any attempted assignment, transfer, pledge, hypothecation or other disposition of an Incentive, or levy or attachment or similar process \ ¿upon the Incentive not specifically permitted herein, shall be null and void and without effect.

(Emphasis added.)
Corporate regulations cannot interfere with the operation of laws that establish community ownership rights.[8] Mr. Funderburg was granted the stock options during the existence of the couple’s community property regime. Under Louisiana’s community property laws, prior to execution of the partition agreement, Mrs. Funderburg owned an undivided one-half community interest in the stock options. In the partition agreement, Mr. Funder-burg transferred his undivided one-half *1153 community interest in the stock options to Mrs. Funderburg. Superior does not dispute that the stock options qualified as community property. Superior contends, however, that Mrs. Funderburg’s ownership rights in the stock options, both prior to and after execution of the partition agreement, did not give her the right to exercise the stock options.
Superior relies on In re Succession of Moss, supra, to support its argument that the non-transferability clause contained in the Stock Option Agreement is binding on Mrs. Funderburg. In In re Succession of Moss, the decedent husband and his business partner formed a closely held corporation during the decedent’s marriage. A “transfer upon death” restriction that was contained in the company’s Articles of Incorporation and in a Shareholders’ Agreement between the shareholders required that upon the death of either shareholder, his stock had to be offered for sale to the surviving shareholder at book value. The decedent’s wife argued that under Louisiana’s community property laws, she was not bound by the “transfer upon death” restriction. The Third Circuit held otherwise, finding that although the decedent’s wife was entitled to ownership of her community interest |9in the stock, her ownership was subject to the transfer restriction, and thus she was required to offer the stock for sale to the surviving shareholder at book value.
We find that under the rationale of In re Succession of Moss, supra, Mr. Funder-burg could indeed transfer and assign his undivided one-half community interest in the stock options to Mrs. Funderburg through the partition agreement; such transfer and assignment was, however, burdened by and subject to all of the terms and conditions contained in the Stock Option Agreement and the Stock Incentive Plan.
According to Section 10.2 of the Stock Incentive Plan, quoted above, the stock options in question were not transferable except under certain limited circumstances and conditions as provided for therein, including, as noted above, transfers pursuant to a “qualified domestic relations order, as defined in the Code,” to an “immediate family member,” specifically including a spouse, “if permitted by the [Plan] Committee and so provided in the Incentive Agreement [i.e., the Stock Option Agreement] or an amendment thereto”. Thus, by the terms of the Stock Incentive Plan under which the Stock Option Agreement was issued, the stock options were in fact transferable, but only subject to and in accordance with the procedures, terms and conditions as described in Section 10.2 of the Stock Incentive Plan.
This conclusion that the stock options were indeed transferable under certain procedures, terms and conditions does not compel, however, a finding that, under the particular facts of this case, Superior converted the stock options in question. In order for there to have been a conversion by Superior, Mrs. Funderburg first has to prove that she had a possessory interest in the stock options, i.e., that she had the right to exercise the stock options at the time Mr. Funderburg exercised them. For Mrs. Funderburg to have obtained the right to exercise the stock options, Section | in10.2 of the Stock Incentive Plan, quoted above, required not only that a qualified domestic relations order be issued and that the transferee be someone described by Section 10.2, but also that the Plan Committee permit the transfer. In other words, an application requesting an amendment to the Stock Option Agreement naming Mrs. Funderburg as the op-tionee thereof in place of Mr. Funderburg had to be made to and approved by the Plan Committee for the transfer of the stock options from Mr. Funderburg to *1154 Mrs. Funderburg in the partition agreement to be effective as to Superior.
From the record, it is clear and undisputed that Mrs. Funderburg made no such application to the Plan Committee. On February 17, 2004, Mrs. Funderburg faxed Ms. Isacks at Superior several pages of the partition agreement, though not a complete copy. Shortly thereafter on that same day, Ms. Isacks faxed Mrs. Funder-burg a copy of the Stock Option Agreement. In various depositions admitted as exhibits to the motions for summary judgment, Mrs. Funderburg admits that after she received the faxed Stock Option Agreement from Ms. Isacks, she made no other contact with Superior through the time Mr. Funderburg exercised the stock options. More than six months after Mrs. Funderburg received the faxed Stock Option Agreement from Ms. Isacks, Mr. Fun-derburg contacted Superior and exercised the stock options. Such action by Mr. Funderburg is highly reprehensible in light of the partition agreement he entered into with Mrs. Funderburg and the consent judgment. However, because it is undisputed from the record that no further steps were taken by Mrs. Funderburg to comply with Section 10.2 of the Stock Incentive Plan, the stock options were never in fact transferred to Mrs. Funderburg’s name on the books of Superior, and thus she never obtained the right to exercise them. Accordingly, Mrs. Funderburg will not be able to prove as a matter of law that Superior converted the stock options.
|nMrs. Funderburg also argues that the various temporary restraining orders and injunctions that she sent at different times to Superior sufficiently put Superior on “notice” that Mr. Funderburg no longer had the right to exercise the stock options. It is unnecessary, however, for this Court to determine the effective life and enforceability of those injunctions or whether Mrs. Funderburg properly raised this issue in the trial court.[9] Clearly, as noted above, Section 10.2 of the Stock Incentive Plan required Mrs. Funderburg to make an application to the Plan Committee requesting an amendment to the Stock Option Agreement naming her as the op-tionee thereof in place of Mr. Funderburg for the transfer of the stock options from Mr. Funderburg to her in the partition agreement to be effective as to Superior, which, as noted above, she undisputedly did not do.
Mrs. Funderburg also claims that under LSA-C.C. art. 2653,[10] she is not bound by the non-transferability clause contained in the Stock Option Agreement because she did not have notice of the same when the partition agreement was executed. The deposition testimony attached to the motions for summary judgment clearly establishes that well before she executed the partition agreement, Mrs. Funderburg in fact had possession of a copy of the Stock Option Agreement in the family safe. She admitted that she retained possession of the family safe and the copy of the Stock Option Agreement contained therein once Mr. Funderburg left the family home. Having admitted prior possession of a copy of the Stock Option Agreement, Mrs. Funderburg cannot under the particular facts of this case claim lack of knowledge or notice of the provisions of the Stock Option Agreement.
*1155 | T ¡¿Based on our thorough consideration of the record and the applicable law, we find that no genuine issues of material fact exist as to Mrs. Funderburg’s lack of pos-sessory rights with respect to her right to exercise the stock options in question. Thus, she will not be able to prove that the stock options transferred to her in the partition agreement with Mr. Funderburg were converted by Superior. Accordingly, Superior is entitled to judgment as a matter of law on its Motion for Summary Judgment.

CONCLUSION

For the above reasons, we affirm the trial court’s grant of summary judgment in favor of Superior.

AFFIRMED

JOHNSON, J., dissents with reasons.

. Mr. Funderburg’s employment with Superi- or ended in July of 2001.

. Mr. Funderburg netted this amount in a cashless transaction in which the appropriate number of shares of Superior stock were sold for the market stock price at the time the stock options were exercised, with the excess amount received over the stock option price being given to Mr. Funderburg.

. Mrs. Funderburg has only appealed the trial court’s grant of Superior’s Motion for Summary Judgment. She has not appealed the trial court’s denial of her Motion for Partial Summary Judgment.

. Marigny v. Allstate Ins. Co., 95-0952 (La.App. 4 Cir. 1/31/96), 667 So.2d 1229, writ denied, 96-0693 (La.4/26/96), 672 So.2d 910.

. Alvarez v. Ciasen, 06-304, p. 3 (La.App. 5 Cir. 10/31/06), 946 So.2d 181, 183.

. Ultra Fabricators, Inc. v. MC Bank and Trust Company, 97-1947 (La.App. 1 Cir.9/25/98), 724 So.2d 210, 214.

. Dual Drilling Co. v. Mills Equip. Investments, Inc., 98-0343, 98-0356 (La.12/1/98), 721 So.2d 853, 857.

. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169, 173 (La.1956).

. The issue of whether the injunctions were properly before the trial court was contested by the parties.

. C.C. art. 2653 states: "A right cannot be assigned when the contract from which it arises prohibits the assignment of that right. Such a prohibition has no effect against an assignee who has no knowledge of its existence.”