SAUNDERS, J.,
dissents and assigns written reasons.
|,I disagree with the majority opinion that Sharon’s argument that the trial court erred in concluding that the stock in HMG had a value of $1,000.00 for the purposes of partition is “fundamentally flawed.”
Unless they validly contract otherwise, spouses domiciled in Louisiana are under the legal regime of community ac-quets and gains. La.Civ.Code arts. 2328 and 2334. The property of married persons is either community or separate. La.Civ.Code art. 2335. Community property includes all property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse. La.Civ.Code art. 2338. The community is a patrimonial mass that includes both assets and liabilities. La.Civ.Code art. 2336 cmt. (c). Each spouse owns a present undivided one-half interest in the community property. La.Civ.Code art. 2336.
Moss, 769 So.2d at 618.
In general, community property may be managed, controlled, or disposed of by ei *1085 ther spouse acting alone. La.Civ.Code art. 2346; Moss, 769 So.2d 614. However, “[a] spouse has the exclusive right to manage, alienate, encumber or lease movables issued or registered in his name as provided by law.” La.Civ.Code art. 2351. Shares of stock are incorporeal movables, La.Civ. Code art. 473, and may be managed exclusively by the spouse in whose name they are registered. La.Civ.Code art. 2351 cmt. (a); Moss, 769 So.2d 614.
12Restrictions on the transfer of corporate stock are valid. Louisiana Weekly Pub’g. Co. v. First Natl Bank of Commerce, 483 So.2d 929 (La.1986). Transfer restrictions do not affect the ownership of the stock in the community, and the spouse in whose name they are not registered still has an undivided one-half interest in it. See e.g. Messersmith v. Messers-mith, 229 La. 495, 86 So.2d 169; Moss, 769 So.2d 614. Instead, such restrictions “merely qualify the privilege of disposition of the stock.” Rao u Rao, 927 So.2d 356 (La.App. 1 Cir.2005), writ denied, 925 So.2d 1232 (La.2006).
In light of these principles of law, -it is clear that a spouse in whose name stock is registered has the authority to execute a stock subscription agreement containing transfer restrictions. Thus, there is no doubt that Derek had the exclusive authority to execute the stock subscription agreement restricting the transfer of the stock upon his death, inability to practice medicine, or termination of employment back to the corporation for the agreed upon price and that such a restriction is valid. However, at the crux of the instant dispute is Derek’s assertion that, because the terms of the stock subscription agreement prohibits him from transferring the stock to any other person or entity besides the corporation for the agreed upon price of $1,000.00, such is the value that must be used for the purposes of partition. I disagree.
Ownership of a thing is defined by our Civil Code. It is “the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, ■ and dispose of it within the limits and under the conditions established by law.” La.Civ.Code art. 477(A). In a partition action, the assets of the community must be valued. La.R.S. 9:2801(4)(a). Then, each of the assets is allocated or assigned to the spouses. “The court shall divide the | acommunity assets and liabilities so that each spouse receives property of an equal net value.” La.R.S. 9:2801(4)(b).
We find no authority that supports Derek’s assertion that the value of the stock for the purposes of partition following a divorce of the shareholder spouse is $1,000.00 because the stock subscription agreement requires the stock be transferred to the corporation for the price of $1,000.00 in the event that the shareholder dies, becomes unable to practice medicine, or terminates his employment with HMG. The ■ stock agreement certainly sets the value of the disposition of the stock in the enumerated circumstances.’ However, the stock subscription agreement does not purport to value the stock except in the event of its disposition in those limited circumstances. In other words, the agreement does not purport to set the value of the use and enjoyment of the stock, but only the value of its disposition should Derek die, become ineligible to practice medicine, or terminate his employment with HMG.
Ownership of the stock in the instant matter inured to Derek a multitude of benefits and, thus, had value to Derek outside of a disposition, in the few enumerated circumstances. In opposition to Derek’s motion, Sharon submitted the affidavit of Mark Shirley, CPA, which identifies “[t]wo distinct intangible assets: [that] re *1086 quire identification and quantification” in the partition action. These assets are goodwill and going concern value. Counsel for Derek submitted no evidence to controvert the affidavit of Mr. Shirley. These assets must be valued and partitioned to determine the value of the corporation and, thus, Derek’s interest in it as a shareholder. See Landry v. Simon, 98-1386 (La.App, 3 Cir. 3/17/99), 732 So.2d 587, writ denied, 99-1050 (La.5/28/99), 743 So.2d 672; McDonald v. McDonald, 40,035 (La.App. 2 Cir. 8/17/05), 909 So.2d 694. Moreover, ownership of the HMG stock gives the shareholder voting rights, a right to receive dividends j4or distributions, and a right to receive a share of the proceeds upon liquidation. See Louisiana Business Corporation Act, La.R.S.12:l-101 et. seq. Each of these rights inures some benefits to Derek, and such must be valued for the purposes of the partition.
My conclusion is not without authority. In Borrello v. Borrello, 614 So.2d 91 (La. App. 4 Cir.1992), writ denied, 616 So.2d 706 (La.1993), a former spouse of a partner in a law firm sought discovery of certain financial documents pertaining to the law firm for the purpose of valuing the partner' spouse’s interest in the firm. The law firm moved to quash a subpoena duces tecum requesting production of the documents and, the motion was granted. On appeal, the former wife asserted that the trial court erred in denying discovery of the requested documents on the grounds that they were necessary to determine the value of the former husband’s partnership interest. The law firm argued that the former wife was bound by the partnership agreement, which purported to value the former husband’s interest in the partnership. The fourth circuit held that the former wife “should be permitted to discover information necessary for her to establish the value- of her husband’s partnership interest beyond the value set forth in the partnership agreement.” Id. at 94.
In Fastabend v. Fastabend, 606 So.2d ■794, 798 (La.App. 3 Cir.), writ denied, 609 So.2d 231 (La.1992), the former husband, a physician, argued that the trial court erred in including the accounts receivable of a medical practice in calculating the value of his interest in the medical partnership, on the grounds that the partnership agreement provided that “[n]o partner shall have or own any interest nor have any claim or right in and to the accounts receivable or any other asset of the partnership.” This court rejected that argument, finding that the accounts receivable were an asset of the partnership and must be valued to ^determine the value of the partnership, in order to determine the former husband’s interest in that partnership. This court noted, in particular, that nothing in the partnership agreement prohibited the accounts receivable from being valued in such a manner.
In the instant matter, it is clear that the Shareholder’s Agreement establishes the value for the disposal of the stock in the event of the death of a shareholder, the inability of the shareholder to practice medicine, and termination of the shareholder’s employment with the corporation. However, none of these circumstances are present in the instant matter. Thus, the trial court must ascertain the value of the stock outside of its disposition. Accordingly, I respectfully dissent as I would remand to the trial court for further proceedings.