BRIDGEPOINT HEALTHCARE LOUISIANA, LLC

VERSUS

ST. THERESA SPECIALTY HOSPITAL, L.L.C.
BLIANT SPECIALTY HOSPITAL, LLC,
OPULENCE MANAGEMENT GROUP, LLC,
AND JUANITA BONDS

NO. 21-CA-612

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 811-429, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

May 11, 2022

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and John J. Molaison, Jr.

**AFFIRMED AS AMENDED**
  **RAC**
  **JGG**
  **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
BRIDGEPOINT HEALTHCARE LOUISIANA, LLC
    Henry A. King
    Michael L. Vincenzo

COUNSEL FOR DEFENDANT/APPELLANT,
JUANITA BONDS
    T. Michael Murphy
    G. Steven Duplechain

**CHAISSON, J.**

Juanita Bonds appeals the trial court's granting of a default judgment in favor of BridgePoint Healthcare, LLC ("BridgePoint"). In challenging this ruling, Mrs. Bonds contends that BridgePoint, in obtaining the default judgment, failed to present a *prima facie* case in support of its claims. She further asserts that the trial court erred in awarding attorney fees to BridgePoint as part of its conversion claim. For the reasons that follow, we affirm the trial court's granting of the default judgment in favor of BridgePoint; however, we vacate the portion of the judgment that awards attorney fees to BridgePoint.

## FACTS AND PROCEDURAL HISTORY

On November 7, 2017, BridgePoint and St. Theresa Specialty Hospital, LLC ("St. Theresa") executed an Asset Purchase Agreement whereby BridgePoint purchased substantially all of the assets of a hospital operated by St. Theresa and located at East Jefferson General Hospital in Metairie. In connection with this purchase agreement, as well as a Management Services Agreement ("MSA") executed between BridgePoint and St. Theresa on November 1, 2017, St. Theresa was entitled to receive payments arising from the rendering of services at the East Jefferson facility up until November 1, 2017. Subsequent to this date, St. Theresa was obligated to turn over to BridgePoint any funds received for hospital operations.

In November of 2018, People's Health issued a check to St. Theresa in the amount of $58,120.23 for services rendered by St. Theresa at the East Jefferson facility in September of 2018. During an audit, BridgePoint discovered that this receivable had not been turned over to BridgePoint as required by the agreements entered into between the parties. After obtaining a copy of the cancelled check from People's Health, Sarah Ann Rand, the Vice President and Chief Financial

Officer of BridgePoint, contacted St. Theresa, who advised her that it was not in possession of the check and recommended that she contact Mrs. Bonds, the president of Opulence Management Group, LLC ("Opulence"). St. Theresa had entered into a Management Services Agreement with Opulence to provide management services for a separate facility located in Kenner. According to testimony in the record, Ms. Rand contacted Mrs. Bonds, who told her to contact the administrator at the Kenner location to handle the matter. Ms. Rand emailed the contact address that Mrs. Bonds had provided and requested an immediate return of the missing funds. Ms. Rand received no reply and thereafter sent another email to the contact provided by Mrs. Bonds. After again receiving no response, Ms. Rand made a demand through an attorney, which was also unsuccessful.

In October of 2020, BridgePoint filed a Petition for Damages against St. Theresa, Bliant Specialty Hospital ("Bliant"), Opulence, and Mrs. Bonds as registered agent, manager, and principal of Bliant and Opulence. In the petition, BridgePoint alleged that on November 11, 2018, a check was issued to St. Theresa in the amount of $58,120.23 for services rendered by BridgePoint on or about September 17, 2018; that this check was not turned over to BridgePoint in violation of the purchase agreement and MSA; that Bliant and/or Opulence, which provided management services for the hospital, on behalf of St. Theresa, received this receivable, and through their principal, Mrs. Bonds, deposited this check rather than turning it over to BridgePoint; and that despite amicable demand, St. Theresa, Bliant, Opulence, and Mrs. Bonds have failed to return this receivable.[1] This original petition asserted causes of action for breach of contract and unjust enrichment against St. Theresa, as well as claims for conversion and unjust

---

[1] The petition also alleged that St. Theresa failed to turn over a second receivable to BridgePoint as required by the agreements entered into between the two parties; however, this second check is not relevant to this appeal.

enrichment against Mrs. Bonds, Opulence, and Bliant, for failure to turn over this receivable. The only claims pertinent to this appeal are the conversion and unjust enrichment claims asserted against Mrs. Bonds for the first receivable.

The record indicates that Mrs. Bonds, Opulence, and Bliant received service of the citation and petition through the Louisiana Long Arm Statute. Despite this service, Mrs. Bonds, Opulence, and Bliant made no appearance in the matter and filed no responsive pleadings. BridgePoint thereafter filed a Motion for Preliminary Default pursuant to La. C.C.P. art. 1701 against Mrs. Bonds, Opulence, and Bliant, which the trial court granted on February 16, 2021.

On March 26, 2021, BridgePoint filed a Motion for Confirmation of Default Judgment against Mrs. Bonds pursuant to La. C.C.P. art. 1702. Therein, BridgePoint asserted: on October 21, 2020, BridgePoint instituted the action against Mrs. Bonds; on December 12, 2020, Mrs. Bonds received service of the citation and petition through the Louisiana Long Arm Statute; on January 4, 2021, the Affidavit of Service was filed into the record; more than thirty days lapsed after the filing of the Affidavit of Service before a preliminary default was entered; more than two days, exclusive of holidays, have elapsed since the entry of the preliminary default judgment; and Mrs. Bonds has still not made any appearance in this matter.

On May 12, 2021, the trial court conducted a hearing on BridgePoint's Motion for Confirmation of Default Judgment. At the hearing, BridgePoint introduced affidavits, exhibits, and the testimony of two witnesses – Sarah Ann Rand, the Vice President and Chief Financial Officer of BridgePoint, and Christina Spinelli, who effected service on Mrs. Bonds. At the conclusion of the hearing, after considering the evidence introduced and the argument of counsel, the trial court entered a judgment confirming the default and awarding attorney fees and court costs to BridgePoint. On May 24, 2021, the trial court signed a written final

default judgment in favor of BridgePoint and against Mrs. Bonds in the total amount of $71,466.10, which includes the principal amount of $58,120.23, attorney fees in the amount of $11,659.00, and costs in the amount of $1,686.87.

Mrs. Bonds now appeals the default judgment entered against her. She specifically contends that the trial court erred in finding that BridgePoint established a *prima facie* case proving conversion and unjust enrichment. She also contests the trial court's award of attorney fees to BridgePoint.

## DISCUSSION

A judgment of default must be confirmed by proof of the demand sufficient to establish a *prima facie* case. La. C.C.P. art. 1702(A). For a plaintiff to obtain a default judgment, he must establish the elements of a *prima facie* case with competent evidence, as fully as though the defendant denied each of the allegations in the petition. A plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits. *River Parish Contractors, Inc. v. Savoie*, 12-148 (La. App. 5 Cir. 9/11/12), 101 So.3d 495, 499. When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto containing facts sufficient to establish a *prima facie* case, shall be admissible, self-authenticating, and sufficient proof of such demand. La. C.C.P. art. 1702(B)(2). Further, there is a presumption that a default judgment is supported by sufficient evidence, but this presumption may be rebutted by the record upon which the judgment is rendered. *Arias v. Stolthaven New Orleans, L.L.C.*, 08-1111 (La. 5/5/09), 9 So.3d 815, 820. In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment. This determination is a factual one governed by the manifest error standard of review. *Id.* at 818; *Evans v. Jolly*, 17-159 (La. App. 5 Cir. 10/25/17), 229 So.3d 650, 653.

Conversion is an intentional tort and consists of an act in derogation of the plaintiff's possessory rights. *Dileo v. Horn*, 15-684 (La. App. 5 Cir. 3/16/16), 189 So.3d 1189, 1198. The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Louisiana civil law conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel. *Funderburg v. Superior Energy Services, Inc.*, 10-517 (La. App. 5 Cir. 12/29/11), 83 So.3d 1148, 1151, *writ denied*, 12-309 (La. 3/30/12), 85 So.3d 126.

On appeal, in her challenge to the default judgment, Mrs. Bonds contends that the trial court erred in finding that BridgePoint established a *prima facie* case proving that Mrs. Bonds personally converted funds. She points out that the evidence presented to the trial court reflected that Opulence, not Mrs. Bonds, owned the account in which BridgePoint's check was deposited. Further, Mrs. Bonds notes the lack of evidence establishing that she, as opposed to some other employee of Opulence, deposited the check into Opulence's account.

In contrast, BridgePoint contends that it sufficiently proved a *prima facie* conversion claim under Louisiana law as it established that the receivable belonged to BridgePoint, that Mrs. Bonds deprived access to BridgePoint of those funds by depositing the check into the Opulence account, and that this amounted to wrongful misuse because Mrs. Bonds was advised that the funds belonged to BridgePoint and ignored requests to return them.

Having thoroughly reviewed the evidence submitted by BridgePoint at the hearing on its Motion for Confirmation of Default Judgment, we find no merit to Mrs. Bonds' argument that BridgePoint failed to establish a *prima facie* case of conversion. At the May 12, 2021 hearing, the testimony, affidavits, and exhibits established that BridgePoint had ownership rights to the funds in question, that St. Theresa contracted with Opulence, through its owner and agent Juanita Bonds, to provide management services for St. Theresa at a Kenner facility, that Mrs. Bonds had authority to deposit and withdraw revenues of St. Theresa through the management agreement, that Mrs. Bonds deposited the check in her Opulence account at Regions bank, and that Mrs. Bonds refused to turn over the check despite amicable demand. Among other documents, BridgePoint introduced the account from Regions Bank opened by Mrs. Bonds in the name of Opulence, the deposited check signed by Mrs. Bonds, and a signature card showing Mrs. Bonds' signature, which matched the signature on the back of the deposited check. In light of this evidence, we find no manifest error in the trial court's granting of a default judgment in favor of BridgePoint and against Mrs. Bonds.

As part of her challenge to the default judgment, Mrs. Bonds also contends that the trial court erred by finding that BridgePoint established a *prima facie* case proving that Mrs. Bonds was unjustly enriched. In light of our determination on the conversion cause of action, we find it unnecessary to address the issue relating to unjust enrichment.

Mrs. Bonds further alleges that the trial court erred in awarding judgment against her personally without any evidence to suggest that she acted for her own benefit or that she acted outside her capacity as mandate for Bliant and/or Opulence. To support her contention that she cannot be held personally liable for the actions of the entity, she cites La. R.S. 12:1320, which sets forth the liability protection afforded to the members, managers, employees, and agents of a limited

liability company, as well as the exceptions thereto.  La. R.S. 12:1320 reads as

follows:

> A. The liability of members, managers, employees, or agents, as such,
> of a limited liability company organized and existing under this
> Chapter shall at all times be determined solely and exclusively by the
> provisions of this Chapter.

> B. Except as otherwise specifically set forth in this Chapter, no
> member, manager, employee, or agent of a limited liability company
> is liable in such capacity for a debt, obligation, or liability of the
> limited liability company.

> C. A member, manager, employee, or agent of a limited liability
> company is not a proper party to a proceeding by or against a limited
> liability company, except when the object is to enforce such a
> person's rights against or liability to the limited liability company.

> D. Nothing in this Chapter shall be construed as being in derogation
> of any rights which any person may by law have against a member,
> manager, employee, or agent of a limited liability company because of
> any fraud practiced upon him, because of any breach of professional
> duty or other negligent or wrongful act by such person, or in
> derogation of any right which the limited liability company may have
> against any such person because of any fraud practiced upon it by
> him.

The Louisiana Supreme Court has recognized that under La. R.S. 12:1320, a

member's protection against personal liability is not unlimited, and that in

narrowly defined circumstances, an individual member can be subjected to

personal liability for obligations for which the limited liability company would

otherwise be solely liable.  *See Ogea v. Merritt*, 13-1085 (La. 12/10/13), 130 So.3d

888.  Further, the Louisiana Supreme Court has identified four facts to consider in

determining whether a member of a limited liability company may be held

personally liable for his negligent or wrongful acts:  1) whether a member's

conduct could be fairly characterized as a traditionally recognized tort; 2) whether

a member's conduct could be fairly characterized as a crime, for which a natural

person, not a juridical person, could be held culpable; 3) whether the conduct at

issue was required by, or was in furtherance of, a contract between the claimant

and the LLC; and 4) whether the conduct at issue was done outside the member's

capacity as a member. *Id.* at 900-01. A court is to evaluate each situation on a case-by-case basis and consider each of the above factors when determining whether the general rule of limited liability must yield to the exception for a member's negligent of wrongful act set forth in La. R.S. 12:1320(D). *Id.* at 905.

Upon our review of the record, we find that Mrs. Bonds failed to rebut the presumption that the default judgment was supported by sufficient evidence. In reviewing the factors set forth in *Ogea*, we find that Mrs. Bonds' actions can be characterized as a tort. As previously discussed, Mrs. Bonds deposited the check that belonged to BridgePoint and failed to return the funds despite amicable demand, thereby amounting to the tort of conversion. Further, Mrs. Bonds' failure to return the money could be perceived as a crime of theft. Additionally, not only was Mrs. Bonds' conversion of and failure to return funds owned by BridgePoint not required by or in furtherance of any of the agreements between BridgePoint and St. Theresa or St. Theresa and Opulence, her conduct was in direct contravention of those agreements. Lastly, even if Mrs. Bonds was acting within the structure of the limited liability company, that factor alone would not be determinative. In light of the foregoing, we find no merit in Mrs. Bonds' argument that she could not be held personally liable.

On appeal, Mrs. Bonds also contests the trial court's award of attorney fees to BridgePoint. She asserts that there is no contract between BridgePoint and herself that allows for the recovery of attorney fees, and further, there is no statutory authority under La. C.C. art. 2315 that allows for the recovery of attorney fees in a conversion claim.

In contrast, Bridgepoint asserts that the award of attorney fees was properly allowed under the Louisiana Unfair Trade Practices Act ("LUTPA"). BridgePoint alleges that it sought recovery against Mrs. Bonds, not just based on conversion or unjust enrichment, but also under any other laws of the State of Louisiana that

would support a right to relief under the facts pled. It reasons that the facts that justified a default judgment against Bonds for conversion also amounted to a deceptive trade practice under LUTPA, which allows for the recovery of attorney fees. We disagree with BridgePoint's argument.

It is well settled in Louisiana that attorney fees are not allowed except where authorized by statute or agreed to by contract. *Jefferson Door Co., Inc. v. Lago Development, L.L.C.*, 03-61 (La. App. 5 Cir. 5/28/03), 848 So.2d 101, 103. In the present case, there is no contract between BridgePoint and Mrs. Bonds that allows for the recovery of attorney fees. As such, BridgePoint's authority to recover attorney fees must be authorized by statute.

In its Petition for Damages, BridgePoint specifically requested attorney fees in connection with its conversion claim against Bonds. Furthermore, in footnote number one of its appellate brief, BridgePoint states:

> BridgePoint notes that its briefing and argument presented at the Evidentiary Hearing in this matter on May 21, 2021 were directed in support of BridgePoint's claim for conversion against Bonds. … Accordingly, BridgePoint seeks an affirmation of the trial court's judgment under that theory of liability.

From our review of the record, it is clear that the attorney fees in this case were requested and awarded in connection with BridgePoint's claim for conversion against Mrs. Bonds. There is no statutory provision that mandates the recovery of attorney fees for a tort lawsuit in conversion. *Fenner v. Schley*, 51,842 (La. App. 2 Cir. 3/14/18), 246 So.3d 770, 774. Further, there was no contract between BridgePoint and Mrs. Bonds that provided for the recovery of attorney fees. Accordingly, we find that the trial court erred in awarding attorney fees as part of BridgePoint's conversion claim against Mrs. Bonds.

## CONCLUSION

For the reasons set forth herein, we affirm the trial court's granting of a default judgment in favor of BridgePoint and against Mrs. Bonds in the amount of

$58,120.23 and costs in the amount of $1,686.87.  However, we vacate that portion of the judgment that awarded attorney fees to BridgePoint.

## AFFIRMED AS AMENDED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 11, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-612

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
MICHAEL L. VINCENZO (APPELLEE)          W. SPENCER KING (APPELLEE)          DAVID M. MCDONALD (APPELLEE)
T. MICHAEL MURPHY (APPELLANT)

**MAILED**
HENRY A. KING (APPELLEE)                    G. STEVEN DUPLECHAIN (APPELLANT)
ATTORNEY AT LAW                             ATTORNEY AT LAW
201 ST. CHARLES AVENUE                      8708 JEFFERSON HIGHWAY
SUITE 4500                                  SUITE B
NEW ORLEANS, LA 70170                       BATON ROUGE, LA 70809